## FOR PUBLICATION



FILED

Jan 30 2014, 6:11 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ALEXIS HUTCHISON**
Greenfield, Indiana

ATTORNEY FOR APPELLEE:

**PAUL RICHARD RAUCH**
Harrison & Moberly, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ALEXIS HUTCHISON and
MARTHA FARBER, deceased,

    Appellant-Defendant,

          vs.

TRILOGY HEALTH SERVICES, LLC,
d/b/a SPRINGHURST HEALTH CAMPUS,

    Appellee-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 30A01-1307-SC-316

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Dan E. Marshall, Judge
The Honorable R. Scott Sirk, Commissioner
Cause No. 30D02-1209-SC-1030

**January 30, 2014**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Alexis Hutchison ("Hutchison") appeals a small claims court ("trial court") judgment in favor of Trilogy Health Services, LLC, d/b/a Springhurst Health Campus ("Springhurst"), on Springhurst's claim against Hutchison and her now-deceased mother, Martha Farber ("Farber"), for payment of services provided to Farber while she was a resident at Springhurst. Hutchison raises three issues that we consolidate and restate as: whether the trial court erred when it entered a judgment in favor of Springhurst and against Hutchison.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY[1]

For a number of years, Farber was ill with cancer, requiring various trips to, and stays at, hospitals. After one of her hospital visits, and finding that she was in need of constant care, she became a resident at Springhurst, a skilled nursing facility. Farber was admitted to Springhurst on November 11, 2011. She stayed at Springhurst through and including February 5, 2012, when Farber moved into her own apartment.

On November 11, 2011, Hutchison signed Springhurst's Move-In Agreement ("Agreement") as a "Responsible Party/Agent." *Appellant's App*. at 28. The Agreement stated in pertinent part:

> The Resident . . . may designate a person to act on the Resident's behalf as a Responsible Party/Agent. If the Resident so designates a Responsible Party/Agent, the Resident shall provide the Facility with a copy of a written agreement that authorizes such individual to manage, use, control or access the Resident's income, financial account(s) or other resources (i.e. real estate or other property), inspect and copy the Resident's records, and execute this

---

[1] We note that on October 7, 2013, Springhurst filed with this court a Notice of Non-Filing of Brief for Appellee, stating its intention not to file an appellate brief.

Agreement on the Resident's behalf. . . . The Responsible Party/Agent further agrees to assist in establishing a financial plan for payment of services . . . and agrees to pay for the Resident's services and supplies that are billed by the Facility. The Responsible Party/Agent further agrees to pay the Facility the full amount of the Resident's income and resources that the Responsible Party/Agent controls or accesses, and agrees to be personally responsible and liable to the Facility for the income and resources of the Resident that the Responsible Party/Agent withholds, misappropriates for personal use, or otherwise does not pay over to the Facility for the Resident's benefit or apply towards payment of the Resident's financial obligations to the Facility under this Agreement.

*Id.* at 13.

On September 28, 2012, Springhurst filed a notice of claim ("Claim") in the small claims division of the Hancock Superior Court, naming as defendants Farber and Hutchison (collectively "Defendants"). The Claim sought judgment against Defendants in the amount of $1,716.90 for services rendered to Farber, plus interest, costs, and attorney's fees. The matter was set for trial on November 26, 2012. After continuances by both sides,[2] the matter was set for trial on February 19, 2013. On February 14, Hutchison wrote to the trial court explaining Farber's grave health, which had declined. On February 15, 2013, the trial court denied what it interpreted as a motion to continue, stating that Defendants had failed to serve Springhurst with the letter (motion), and on February 21, 2013, the trial court entered a default judgment in favor of Springhurst; Farber passed away that same day.[3] However, in March 2013 Hutchison filed a Notice of Appeal, which the trial court treated as a motion to set aside, and to it Hutchison attached verification that she faxed the

---

[2] Defendants have proceeded pro se throughout all trial court and appellate proceedings.

[3] According to Hutchison, Farber "left no estate . . . there was nothing to probate." *Appellant's Br.* at 20; *Tr.* at 19 ("She had no assets.").

February 15 letter to counsel for Springhurst and that it was received; thereafter, the trial court set aside the previously-entered default judgment and set the matter for trial on May 24, 2013.

At the May 24 trial, Springhurst called as its only witness Dionne Fields ("Fields"), who was the current business office manager[4] and custodian of business records at Springhurst. Fields testified to the above-cited language from the Agreement concerning the Responsible Party/Agent, and she testified that the outstanding charges consisted of bed hold fees, beauty shop services, and respiratory equipment. Upon cross examination, Hutchison asked Fields, "Do you have in your documents any power of attorney giving me any sort of financial authority for my mother?" *Tr.* at 17. Fields replied, "No I do not." *Id.* Fields also agreed she was not present when Hutchison signed the document and thus was not present when "assurances" were made to Hutchison. *Id.*

During her case in chief, Hutchison testified that she was not Farber's power of attorney and "had no authority to manage her funds," including her pension or social security checks. *Id.* at 19. Hutchison reaffirmed, "I have no authority to use my mother's income for anything. I was not her power of attorney," noting the only thing she could have done was point out to her mother that a bill was owed. *Id.* at 21. Hutchison also testified that her mother only became aware of the debt owed after she was no longer a resident at Springhurst and that her mother disputed the bill, other than $167 in hair salon services. Hutchison also called as a witness her husband, David Hutchison ("David"), who

---

[4] Fields was not the business office manager when Farber was a resident at the facility.

4

was present at the meeting on November 11, 2011, when Hutchison signed the Agreement. David testified that when Hutchison inquired whether signing the Agreement would make her personally financially responsible, the Springhurst representative answered with "an emphatic no." *Id*. at 23.

The trial court took the matter under advisement. On June 13, 2013, the trial court issued an entry finding in favor of Springhurst and against Hutchison in the amount of $2,610.87 plus court costs. Hutchison filed a motion asking for clarification and an order that would specify findings of fact with reference to evidence presented. In response to this motion, the trial court thereafter issued another entry stating "the court found the plaintiff proved the defendant liable pursuant to contract and Indiana case law for the sum of $2,610.87." *Appellant's App*. at 10. Springhurst initiated proceedings supplemental to collect the judgment, but the trial court granted Hutchison's motion to stay further proceedings pending her appeal. Hutchison now appeals.

## DISCUSSION AND DECISION

This case was tried before the bench in small claims court, and in such cases, we review for clear error. *Trisler v. Carter*, 996 N.E.2d 354, 356 (Ind. Ct. App. 2013). In our review, we presume that the trial court correctly applied the law, and we will not reweigh the evidence or determine the credibility of witnesses but will consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id*. Although we are particularly deferential to the trial court in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according the substantive rules of law, we owe no deference to a small claims court's legal

5

conclusions regarding questions of law, which we review de novo. *Trinity Homes. LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). A judgment is clearly erroneous when a review of the materials on appeal leaves us firmly convinced that a mistake has been made. *Trisler*, 996 N.E.2d at 356. Here, the judgment rendered in favor of Springhurst was a general judgment, unaccompanied by findings and conclusions; a general judgment will be affirmed upon any legal theory consistent with the evidence. *Clark v. Hunter,* 861 N.E.2d 1202, 1206 (Ind. Ct. App. 2007). In this case, Springhurst elected not to file an appellee's brief. An appellee who does not respond to the appellant's allegations of error on appeal runs a considerable risk of reversal. *Trisler*, 996 N.E.2d at 356. Where an appellee has not filed a brief on appeal, the appellant's brief need only demonstrate *prima facie* reversible error in order to justify a reversal. *Id.* at 356-57. *Prima facie* error in this context is defined as, "at first sight, on first appearance, or on the face of it." *Trinity Homes*, 848 N.E.2d at 1068.

In this case, Springhurst's claim is that Hutchison is contractually liable for the outstanding bill because she signed the Agreement as a Responsible Party and, therefore, was required to use Farber's money to pay the bill for amounts owed to Springhurst. As Hutchison correctly asserts, Congress has imposed limitations on the concept of a family member being financially responsible for a family member's care. For instance, federal law prohibits a nursing home certified as eligible for Medicare or Medicaid reimbursement from requiring guarantees as a condition of admission or extended care: 42 U.S.C. §§1396r(c)(5)(A)(ii) and 1395i-3(c)(5)(A)(ii) provide that with respect to admission to a nursing facility, the facility "must not require a third party guarantee of payment to the

6

facility as a condition of admission . . . to, or continued stay in, the facility." *See also* 42 C.F.R. § 483.12(d)(2) (same). These provisions plainly prohibit facilities from conditioning admission upon a third party's guarantee of private pay costs. However, the analysis does not end there.

The federal statutes also state that Medicare-qualified and Medicaid-qualified facilities are not precluded from "requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care." 42 U.S.C. §§ 1395i-3(c)(5)(B)(ii), 1396r(c)(5)(B)(ii); 42 C.F.R. § 483.12(d)(2). A section in the Indiana Administrative Code concerning "admissions" to "comprehensive care facilities" provides likewise:

> The facility must not require a third party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility may require an individual who has legal access to a resident's income or resources available to pay for facility care to sign a contract, without incurring personal financial liability, to provide facility payment from the resident's income or resources.

410 Ind. Admin. Code 16.2-3.1-16.[5]

Admission documents often use the term "responsible party" for third-party designations. *See* Katherine C. Pearson, *The Responsible Thing to Do About "Responsible Party" Provisions in Nursing Home Agreements: A Proposal for Change on Three Fronts*,

---

[5] We observe that the language of Indiana Code section 16-26-1-12(g), even though it does not govern admission into a skilled nursing facility, nevertheless similarly reflects the intention to limit a family member's financial exposure for another's care, stating that an individual appointed to consent to health care of another person, i.e., a health care representative, "does not become personally liable for the cost of the health care by virtue of that consent."

37 U. Mich. J.L. Reform 757, 764 (2004). While resident rights advocates have taken the position that third-party guarantee, or responsible party, provisions are inherently illegal, inconsistent with the goal of federal law, and are unenforceable, some courts have concluded that under federal law, third parties can "volunteer" to sign as guarantors of payment to nursing homes. *Id.* It appears Indiana courts have not yet expressly spoken to the legality of the responsible party provisions; although Hutchison urges us to declare that such provisions are unenforceable, we find it unnecessary to reach that issue today.

The Agreement before us provided that the resident, in this case Farber, "may designate" a person to act on her behalf as a Responsible Party/Agent. *Appellant's App.* at 13. As such, Farber was permitted, but not required, to designate an individual to act on her behalf. The Agreement continued,

> *If* the Resident so designates a Responsible Party/Agent, the Resident *shall provide* the Facility with a copy of a written agreement that authorizes such individual to manage, use, control or access the Resident's income, financial account(s) or other resources (i.e. real estate or other property), inspect and copy the Resident's records, and execute this Agreement on the Resident's behalf.

*Id.* (emphasis added). There is no evidence that Farber, or anyone else, provided Springhurst with any such document; indeed, the unrefuted evidence is that Springhurst did not possess any such document. Simply stated, there was no evidence that Hutchison ever had any authority to "manage, use, control or access" her mother's income, financial accounts, or other resources. Hutchison repeatedly testified that she was not and never had been her mother's power of attorney and never had any authority to access her mother's money. *Tr.* at 19, 20, 21, 24. Springhurst presented no evidence to the contrary.

The Agreement did not expressly define the term Responsible Party, but outlined the responsibilities and obligations, stating that the Responsible Party agreed "to pay the Facility the full amount of the Resident's income and resources *that the Responsible Party/Agent controls or accesses.*" *Appellant's App*. at 13 (emphasis added). That is, the Agreement obligated the Responsible Party to pay Springhurst only to the extent that the Responsible Party had access or control of the Resident's income and resources. Again, the uncontroverted evidence presented here was that Hutchison possessed neither control nor access to Farber's income and resources. Under the Agreement, the Responsible Party also agreed "to be personally responsible and liable to the Facility *for the income and resources of the Resident that the Responsible Party/Agent withholds, misappropriates for personal use, or otherwise does not pay over to the Facility* for the Resident's benefit or apply towards payment of the Resident's financial obligations to the Facility[.]" *Id*. (emphasis added). No evidence was presented to establish or even suggest that Hutchison withheld or misappropriated Farber's funds, and while Hutchison did not "pay over" Farber's income or resources to Springhurst, there was no evidence that, at any time, she had any authority to do so.[6]

Under the circumstances of this case, we find that Hutchison has demonstrated *prima facie* reversible error; Hutchison agreed "to pay the Facility the full amount of the

---

[6] The facts of this case stand in contrast to a situation in which a son or daughter possessed a power of attorney over the parent's financial affairs, or where that adult child misappropriated his or her parent's bank account funds rather than pay the nursing home facility. *See e.g.*, *Sunrise Healthcare Corp. v. Azarigian*, 821 A.2d 835, 837 (Conn. App. Ct. 2003) (daughter, who held a power of attorney for her mother, held liable for breach of contract for failing to comply with promise to use resident's resources to pay nursing home where nursing home knew daughter held power of attorney and where daughter made gift transfers from her mother's account of over $49,000).

9

Resident's income and resources that the Responsible Party/Agent controls or accesses," and there was no evidence presented that she ever had access to or control of Farber's income or resources from which to make payment to Springhurst. *Appellant's App*. at 13. We hold that the trial court erred when it entered judgment against Hutchison in favor of Springhurst, and we reverse the judgment of the trial court and remand with instructions to enter judgment for Hutchison.

Reversed and remanded.

FRIEDLANDER, J., and BAILEY, J., concur.