[Cite as *Vancrest Mgt. Corp. v. Mullenhour*, 2019-Ohio-2958.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

VANCREST MANAGEMENT CORP.,

    PLAINTIFF-APPELLANT,               CASE NO.  1-18-59

    v.

LISA MULLENHOUR,                     O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2017 0475

**Judgment Affirmed**

Date of Decision:    July 22, 2019

APPEARANCES:

    *Aaron M. Baker* for Appellant

    *Zachary D. Maisch* for Appellee

Case No. 1-18-59

**ZIMMERMAN, P.J.**

{¶1} Plaintiff-appellant, Vancrest Management Corporation ("Vancrest"), appeals the October 4, 2018 judgment of the Allen County Court of Common Pleas dismissing its complaint against defendant-appellee, Lisa Mullenhour ("Mullenhour"). For the reasons that follow, we affirm.

{¶2} On August 23, 2017, Vancrest filed a breach-of-contract complaint seeking damages from Mullenhour for services provided to Mullenhour's mother, Wanda Hohlbein ("Hohlbein"), for Hohlbein's nursing-facility care from January 4, 2017 through the date of Hohlbein's death on May 11, 2017. (Doc. No. 1). Although file stamped on September 14, 2017, Vancrest served an amended complaint on Mullenhour on September 11, 2017. (Doc. No. 4). (*See also* Appellee's Brief at 1). On September 13, 2017, Mullenhour filed her answer to Vancrest's amended complaint and filed a frivolous-conduct counterclaim. (Doc. No. 3). Vancrest filed an answer to Mullenhour's counterclaim on October 2, 2017. (Doc. No. 7).

{¶3} Mullenhour filed a motion for summary judgment on December 5, 2017. (Doc. No. 10). On December 26, 2017, Vancrest filed a memorandum in opposition to Mullenhour's motion for summary judgment and a motion for summary judgment as to its breach-of-contract claim. (Doc. No. 11). Mullenhour filed a memorandum in opposition to Vancrest's motion for summary judgment on

December 28, 2017.  (Doc. No. 13).  Vancrest filed its response to Mullenhour's memorandum in opposition to its motion for summary judgment on January 16, 2018.  (Doc. No. 14).  That same day, the trial court denied Mullenhour's and Vancrest's motions for summary judgment.  (Doc. No. 15).

{¶4} On March 30, 2018, Vancrest filed a second amended complaint alleging causes of action for breach of contract, promissory estoppel, unjust enrichment, fraudulent misappropriation, and fraudulent misrepresentation.  (Doc. No. 23).  On April 4, 2018, Mullenhour filed her answer to Vancrest's second amended complaint.  (Doc. No. 24).

{¶5} After a bench trial on October 4, 2018, the trial court dismissed Vancrest's second amended complaint under Civ.R. 41(B)(2).  (Doc. No. 43).[1]

{¶6} Vancrest filed its notice of appeal on November 2, 2018.  (Doc. No. 45). It raises two assignments of error for our review, which we will address together.

## Assignment of Error No. I

**Trial Court Erred as a Matter of Law in its Application of Ohio Revised Code Section 1337.082(A) to the Determination of Whether Appellee Could Be Held Personally Liable.**

## Assignment of Error No. II

**The Trial Court's Decision was Against the Manifest Weight of the Evidence When No Evidence was Presented to Rebut Appellant's Claims**

---

[1] Mullenhour voluntarily dismissed her counterclaim prior to the start of trial.  (Doc. No. 43); (Oct. 4, 2018 Tr. at 4).

Case No. 1-18-59

{¶7} In its assignments of error, Vancrest argues that the trial court erred by dismissing its complaint against Mullenhour. Specifically, Vancrest argues that it presented unrebutted evidence that Mullenhour can be held personally liable for Hohlbein's debt by operation of R.C. 1337.092 based on a breach of the Consent to Treat and Admission Agreement (the "agreement"). In the alternative, Vancrest argues that it presented unrebutted evidence that Mullenhour can be held personally liable for Hohlbein's debt under theories of fraudulent misrepresentation, fraudulent misappropriation, or unjust enrichment.[2]

*Standard of Review*

{¶8} "Civil Rule 41(B)(2) permits a defendant in a nonjury action to move for dismissal of the action after the close of the plaintiff's case." *Mohn v. Ashland Cty. Chief Med. Examiner*, 5th Dist. Ashland No. 14-COA-031, 2015-Ohio-1985, ¶ 28. "Dismissals under Civil Rule 41(B)(2) are similar in nature to a directed verdict in jury actions; however, because a Civil Rule 41(B)(2) dismissal is used in nonjury actions, it requires the trial court and reviewing courts to apply different tests." *Id.*, citing *Cent. Motors Corp. v. Pepper Pike*, 63 Ohio App.2d 34, 48 (8th Dist.1979).

{¶9} "Under Civ.R. 41(B)(2), a trial court may consider 'both the law and the facts.'" *Mueller v. All-Temp Refrig., Inc.*, 3d Dist. Van Wert No. 15-13-08, 2014-Ohio-2718, ¶ 39, quoting *Ohio Valley Associated Bldrs. & Constrs. v. Rapier*

---

[2] Vancrest does not challenge the trial court's decision as to its promissory-estoppel cause of action. *See Gilchrist v. Sax Mtge. Servs.*, 10th Dist. Franklin No. 12AP-556, 2013-Ohio-949, ¶ 13.

-4-

*Elec., Inc.*, 12th Dist. Butler Nos. CA2013-07-110 and CA2013-07-121, 2014-Ohio-1477, ¶ 23. "Therefore, under the rule, the trial judge as the trier of fact does not view the evidence in a light most favorable to plaintiff, but instead actually determines whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard." *Mohn* at ¶ 28, citing *L.W. Shoemaker, M.D., Inc. v. Connor*, 81 Ohio App.3d 748, 752 (10th Dist.1992) and *Harris v. Cincinnati*, 79 Ohio App.3d 163, 168 (1st Dist.1992). *See also Mueller* at ¶ 40 (noting that the trial court does not review "'the evidence in the light most favorable to the plaintiff but is required only to determine whether the plaintiff has made out his case by a preponderance of the evidence.'"), quoting *Jacobs v. Bd. of Cty. Commrs. of Auglaize Cty.*, 27 Ohio App.2d 63, 65 (3d Dist.1971). "Even if the plaintiff has presented a prima facie case, dismissal is still appropriate where the trial court determines that the necessary quantum of proof makes it clear that plaintiff will not prevail." *Mohn* at ¶ 28, citing *Fenley v. Athens Cty. Genealogical Chapter*, 4th Dist. Athens No. 97CA36, 1998 WL 295496, *3 (May 29, 1998). *See also Mueller* at ¶ 39 (""The premise behind the rule is if the court in a bench trial disbelieves the plaintiff's facts or disagrees with the plaintiff's urged application of the law, then there is no reason to hear the defendant's case."'"), quoting *Ohio Valley Associated Bldrs.* at ¶ 22, quoting *Martin v. Lake Mohawk Property Owner's Assn.*, 7th Dist. Carroll No. 04 CA 815, 2005-Ohio-7062, ¶ 19.

{¶10} A dismissal under Civ.R. 41(B)(2) will be reversed on appeal only if it is erroneous as a matter of law or against the manifest weight of the evidence. *Mueller* at ¶ 40, citing *Jacobs* at 65; *Mohn* at ¶ 29, citing *Ogan v. Ogan*, 122 Ohio App.3d 580, 583 (12th Dist.1997). Under the manifest-weight standard, this court neither weighs the evidence nor judges the credibility of witnesses; rather, our role is to determine whether the trial court's judgment is supported by some competent, credible evidence. *Mohn* at ¶ 29, citing *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279 (1978), syllabus; *Univ. of Findlay v. Martin*, 3d Dist. Hancock No. 5-17-02, 2017-Ohio-7016, ¶ 10 ("Judgments supported by some competent, credible evidence will not be reversed on appeal as being against the manifest weight of the evidence."), citing *Phillimore v. Butterbaugh*, 5th Dist. Richland No. 14CA32, 2014-Ohio-4641, ¶ 25.

*Analysis*

{¶11} As an initial matter, Vancrest contends that the trial court committed reversible error because Mullenhour did "not present rebuttal evidence." (Appellant's Brief at 7, citing *Conti v. Spitzer Auto World Amherst Inc.*, 9th Dist. Lorain No. 07CA009121, 2008-Ohio-1320, ¶ 54 (Dickson, J., concurring)). Vancrest's assertion is erroneous for a number of reasons. Primarily, the alleged proposition of law to which Vancrest directs us appears in a concurring opinion (related to a case involving a jury trial), which discusses that appellate-court judge's

opinion as to the criminal- and civil-manifest-weight standards of review. In that concurring opinion, that appellate-court judge cites to a more verbose concurring opinion (authored by the same appellate-court judge) explaining his disagreement with the Supreme Court of Ohio's recitation of the manifest-weight standard of review applied to civil cases in Ohio. *See Huntington Natl. Bank v. Chappell*, 183 Ohio App.3d 1, 2007-Ohio-4344, ¶ 17-75 (9th Dist.) (Dickson, J., concurring). Clearly, one appellate-court judge's opinion, appearing as a concurring opinion regarding the criminal- and civil-manifest-weight standards of review, does not rise to the level of an applicable statement of law.

{¶12} Moreover, it is illogical to even contend that—under the standard of review applied to motions to dismiss under Civ.R. 41(B)(2)—a dismissed action is reversible because the defense did not present rebuttal evidence. In other words, the purpose of Civ.R. 41(B)(2) is to preserve judicial economy by permitting a trial court to assess whether the plaintiff has established the elements of its case under the appropriate quantum of evidence before moving forward with the trial. Accordingly, the focus of an appellate court's review of a trial court's dismissal of an action under Civ.R. 41(B)(2) assesses the trial court's analysis of the *plaintiff's* case. That is, we review whether the trial court's conclusion that the *plaintiff* failed to establish the appropriate quantum of proof for each element of its case is supported by some competent, credible evidence or whether the trial court

erroneously applied the law. Therefore, applying the appropriate standard-of-review, we will address Vancrest's argument that the trial court erred by dismissing its complaint.

*Breach of Contract*

{**¶13**} We will begin by addressing Vancrest's argument that the trial court's dismissal of its breach-of-contract claim is in error and against the manifest weight of the evidence. "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 41. However, "'"[a] contract is binding only upon parties to a contract and those in privity with them."'" *Gilchrist v. Saxon Mtge. Servs.*, 10th Dist. Franklin No. 12AP-556, 2013-Ohio-949, ¶ 23, quoting *DVCC, Inc. v. Med. College of Ohio*, 10th Dist. Franklin No. 05AP-237, 2006-Ohio-945, ¶ 19, quoting *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340, ¶ 25 (10th Dist.).

{**¶14**} On appeal, Vancrest does not dispute that Mullenhour did not execute the contract in her personal capacity; rather, it concedes that Mullenhour executed the contract in her representative capacity as attorney in fact for Hohlbein. (*See* Appellant's Brief at 8); (Appellant's Reply Brief at 2, 4). *Compare Gilchrist* at ¶ 18. Accordingly, because Mullenhour (in her personal capacity) was not a party to

the contract, Vancrest acknowledges that its ability to recover from Mullenhour for Hohlbein's failure to pay is limited. *Accord Huntington Natl. Bank v. A & J Plumbing, Inc.*, 11th Dist. Geauga No. 2011-G-3021, 2012-Ohio-526, ¶ 27. *See Extendicare Health Servs., Inc. v. Dunkerton*, 11th Dist. Portage No. 2015-P-0004, 2017-Ohio-427, ¶ 28. *See also Gilchrist* at ¶ 23. Nonetheless, Vancrest asserts that an avenue for recovery exists under R.C. 1337.092.

{¶15} R.C. 1337.092 provides, in its relevant part, that "the attorney in fact is not personally liable on the contract, unless the contract otherwise specifies." R.C. 1337.092(A). The statute also sets forth exceptions to that general rule and provides, in its relevant part, as follows:

> (B) An attorney in fact is not personally liable for a debt of the attorney in fact's principal, unless one or more of the following applies:
>
> (1) The attorney in fact agrees to be personally responsible for the debt.
>
> * * *
>
> (3) The negligence of the attorney in fact gave rise to or resulted in the debt.

R.C. 1337.092(B)(1), (3). In this case, Vancrest contends that Mullenhour could be held personally liable for Hohlbein's debt (1) because "the [contract] specifically provided for personal liability" or (2) because Mullenhour's negligence gave rise to or resulted in the debt.

{¶16} As an initial matter, Mullenhour contends that Vancrest waived any argument relative to R.C. 1337.092 for purposes of appeal because it did not raise the applicability of the statute in its second amended complaint or in its case-in-chief. "An appellant cannot change the theory of his case and present new arguments for the first time on appeal." *Gilchrist* at ¶ 22, citing *Havely v. Franklin Cty.*, 10th Dist. Franklin No. 07AP-1077, 2008-Ohio-4889, ¶ 53, fn. 3 and *Brewer v. Brewer*, 10th Dist. Franklin No. 09AP-146, 2010-Ohio-1319, ¶ 23. *See also Dunkerton* at ¶ 31 ("Due process requires notice and an opportunity to be heard at a meaningful time and in sufficient time to permit a party to defend the allegations against him."), citing *Bd. of Trustees of Columbia Twp. v. Albertson*, 9th Dist. Lorain No. 01 CA007785, 2001 WL 1240135, *5 (Oct. 17, 2001), citing *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996), and citing *W. Chester Twp. Bd. of Trustees v. Speedway Superamerica, L.L.C.*, 12th Dist. Butler No CA2006-05-104, 2007-Ohio-2844, ¶ 43. "Generally, appellate courts will not consider arguments that were never presented to the trial court whose judgment is sought to be reversed." *Gilchrist* at ¶ 22, citing *Brewer* at ¶ 23, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997).

{¶17} At best, Vancrest *remotely* mentioned the applicability of R.C. 1337.092—namely, the negligence exception—at trial in its response to Mullenhour's response to its opposition to Mullenhour's motion to dismiss. (*See*

Oct. 4, 2018 Tr. at 109). However, Vancrest did not allege the applicability of the statute in its second amended complaint or in its case-in-chief. *See Gilchrist* at ¶ 21; *Dunkerton* at ¶ 31. Indeed, in its opening statement, Vancrest stated that its theory of the case was that Mullenhour is personally liable for Hohlbein's debt based on a breach of contract or, in the alternative, Vancrest theorized that she can be held personally liable under theories of "promissory estoppel, fraudulent misrepresentation, and fraudulent misappropriations [sic], and potentially some unjust enrichment." (Oct. 4, 2018 Tr. at 3-4). In other words, the record reflects that Mullenhour did not have any meaningful opportunity to respond to any argument regarding the applicability of R.C. 1337.092. *See Dunkerton* at ¶ 31. Moreover, based on the omission of an argument concerning the applicability of R.C. 1337.092 in Vancrest's second amended complaint and its case-in-chief, the trial court was not afforded an opportunity to address or to fully consider the statute's applicability. *See Dunkerton* at ¶ 31. Based on these facts, and the precedent of our sister appellate districts, Vancrest waived any argument concerning the applicability of R.C. 1337.092 for purposes of appeal. *See Gilchrist* at ¶ 22; *Dunkerton* at ¶ 31.

{¶18} Nevertheless, we note that there may be an argument available concerning the applicability of state and federal regulations under the Nursing Home

Reform Act.[3] *See, e.g.*, *Classic Healthcare Sys., LLC v. Faun Miracle*, 12th Dist. Warren No. CA2017-03-029, 2017-Ohio-8540, ¶ 33 (Powell, P.J., dissenting); *Manor of Lake City, Inc. v. Hinners*, 548 N.W.2d 573, 576 (Iowa1996). *See also Cook Willow Health Ctr. v. Andrien*, 54 Conn. L. Rptr. 729, 2012 WL 5200369, *3 (Sept. 28, 2012) (noting that a nursing-facility agreement "unambiguously complies with" federal regulations when "'it expressly prohibits personal liability on the part of the defendant for payments made to [a nursing facility] from [a resident's] account,' and second, 'the contract obligates the defendant to use [the resident's] assets for the payment of services'"), quoting *Sunrise Healthcare Corp. v. Azarigian*, 76 Conn.App. 800, 808 (2003). *See generally Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 116, 85 A.3d 947 (2014) (characterizing the Nursing Home Reform Act as "Congress's statutory scheme intended to protect nursing home residents and their families"), citing Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100203, § 4211, 101 Stat. 1330, 182-221 (1987).  Indeed, "federal law has long barred nursing homes accepting either Medicaid or Medicare from compelling third party guarantees of resident payment, but permits such facilities to require individuals with legal access to the resident's assets to pay for the resident's care with such assets." *Manahawkin Convalescent* at 116.  *See Inova Health Sys. Servs., Inc. v. Bainbridge,* 81 Va. Cir. 39, 2010 WL 7765105, *4 (July

---

[3] Based on the information contained within the record, we are presuming that the Federal Nursing Home Act applies to Vancrest.

Case No. 1-18-59

19, 2010) ("It is clear * * * that Congress did not want nursing homes to force others not in privity, such as a resident's family member, to assume personal financial responsibility for the care of the resident."), citing H.R. Rep. No. 104-651 (1996).[4]

{¶19} In particular, one component of the federal-statutory scheme, provides that "[w]ith respect to admissions practices a nursing facility must * * * not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in the facility." 42 U.S.C. 1396r(c)(5)(A)(ii). However,

> Subparagraph (A)(ii) shall not be construed as preventing a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (*without incurring personal financial liability*) to provide payment from the resident's income or resources for such care.

(Emphasis added.) 42 U.S.C. 1396r(c)(5)(B)(ii).[5][6] *See Manahawkin Convalescent* at 116 (suggesting that the regulation distinguishes "between a nursing home resident's assets in the control of a third party, which may be pursued by the facility, and that third party's personal funds, which are beyond the facility's reach").

---

[4] *See* Pearson, *The Responsible Thing to Do About "Responsible Party" Provisions in Nursing Home Agreements: A Proposal for Change on Three Fronts*, 37 U. Mich. J.L. Reform 757, 777-778 (2004) (discussing the application of traditional-agency theory to third-party liability provisions of nursing-facility agreements); *Heiby Oil Co. v. Pence*, 3d Dist. Auglaize No. 2-99-02, 1999 WL 378370, *2 (June 3, 1999) (discussing traditional agency law).

[5] "Similar language appears in [42 U.S.C. 1395i-3(c)(5)(A)(ii) and (B)(ii)], which govern skilled nursing facilities that accept Medicare." *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 116, 85 A.3d 947 (2014).

[6] *See, e.g.*, Va. Code Ann. 32.1-138.3 (defining a resident's "income or resources" as "any amount deemed to be income or resources of the resident for purposes of Medicaid eligibility and any resources transferred by the resident to a third party if the transfer disqualifies the resident from Medicaid coverage for nursing facility services").

-13-

Case No. 1-18-59

Somewhat more restrictively, the Code of Federal Regulations provides, in its

relevant part, as follows:

> (3) The facility must not request or require a third party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility may request and require a resident representative who has legal access to a resident's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the resident's income or resources.

(Emphasis added.)  42 C.F.R. 483.15(a)(3).[7]  Finally, Ohio's regulation provides, in

its relevant part, as follows:

> (C) A provider of a [nursing facility] shall not:
>
> * * *
>
> (4) Require a third party to accept personal responsibility for paying the facility charges out of his or her own funds. However, the facility may require a representative who has legal access to an individual's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the individual's income or resources if the individual's medicaid application is denied and if the individual's cost of care is not being paid by medicare or another third-party payor. A third-party guarantee is not the same as a third-party payor (i.e., an insurance company), and this provision does not preclude the facility from obtaining information about medicare and medicaid eligibility or the availability of private insurance. The prohibition against third-party guarantees applies to all individuals and prospective individuals in all certified [nursing facilities] regardless of payment source. This provision does not prohibit a third party from voluntarily making payment on behalf of an individual.

---

[7] "42 C.F.R. 483.15(A)(3) * * * was amended in October 2016 to prohibit facilities from *requesting* a third-party guarantee of payment."  (Emphasis added.)  *Montefiore Home v. O'Donnell*, 8th Dist. Cuyahoga No. 107074, 2018-Ohio-5238, ¶ 6.

-14-

(Emphasis added.) Ohio Adm.Code 5160-3-02(C)(4).[8] [9] However, because we conclude that Vancrest waived any argument concerning the applicability of R.C. 1337.092, we are constricted by the notions of due process from addressing the applicability of the Federal Nursing Home Reform Act and corresponding Ohio regulations to the facts of this case.

*Fraudulent Misrepresentation*

{¶20} Next, Vancrest argues that the trial court erred by dismissing its fraudulent-misrepresentation claim. In particular, Vancrest contends that the trial court's dismissal is against the manifest weight of the evidence because it presented undisputed evidence that Mullenhour fraudulently (intentionally) misrepresented her control over Hohlbein's resources. In other words, Vancrest contends that it presented evidence that it was fraudulently induced to enter into the agreement based on Mullenhour's "represent[ation] that she had legal access and authority over all of the Resident's income, assets, and personal and real property." (Appellant's Brief at 15).

---

[8] "'Resources' means cash, funds held within a financial institution, investments, personal property, and real property an individual and/or the individual's spouse has an ownership interest in, has the legal ability to access in order to convert to cash, and is not legally prohibited from using for support and maintenance." Ohio Adm.Code 5160:1-1-01.

[9] *See* Pearson, 37 U. Mich. J.L. Reform at 782-783 (suggesting that the "roles" of third-party signers can be susceptible to "alternative, inconsistent meanings" and that roles identified, for instance, as "attorney in fact"; "responsible party"; "representative"; "guarantor;" or "sponsor" are not mutually exclusive). *See also Meadowbrook Center, Inc. v. Buchman*, 149 Conn.App. 177, 201-203, 90 A.3d 219 (2014) (addressing the nuances of third-party identifiers in admission agreements); *Manahawkin Convalescent*, 217 N.J. at 120 (concluding that the "cause of action was not defined in sufficient detail * * * and was not properly pled" because it was unclear whether the nursing home was asserting its claim against O'Neill in her fiduciary capacity or against her individually).

{¶21} "Fraud in the inducement arises when a party is induced to enter into an agreement based on a misrepresentation." *Tesar Indus. Contrs., Inc. v. Republic Steel*, 9th Dist. Lorain No. 16CA010957, 2018-Ohio-2089, ¶ 45, citing *Terry v. Bishop Homes of Copley, Inc.*, 9th Dist. Summit No. 21244, 2003-Ohio-1468, ¶ 21. "The fraud relates *not* to the nature of the contract, but to the facts prompting its execution." (Emphasis added.) *Id.*, citing *Terry* at ¶ 21, citing *Harper v. J.D. Byrider*, 148 Ohio App.3d 122, 2002-Ohio-2657, ¶ 11 (9th Dist.).

{¶22} An action for fraud in the inducement requires proof of "'[1] a representation or, where there is a duty to disclose concealment of a fact, [2] which is material to the transaction at hand, [3] made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, [4] with the intent of misleading another into relying upon it, [5] justifiable reliance upon the representation or concealment, and [6] a resulting injury proximately caused by the reliance.'"[10] *Id.*, quoting *Ponder v. Culp*, 9th Dist. Summit No. 28184, 2017-Ohio-168, ¶ 11. *See also Countrymark Coop., Inc. v. Smith*, 124 Ohio App.3d 159, 171 (3d Dist.1997), citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 73 (1986).

---

[10] The elements of fraudulent misrepresentation are identical to the elements of fraud in the inducement. *Compare Funk v. Durant*, 155 Ohio App.3d 221, 2003-Ohio-5591, ¶ 20 *with Countrymark Coop., Inc. v. Smith*, 124 Ohio App.3d 159, 171 (3d Dist.1997).

**{¶23}** In this case, the trial court concluded that Vancrest "did not present any credible evidence that Mullenhour concealed or misrepresented any fact material to her mother's nursing home bill." (Doc. No. 43). In our review, there is some competent, credible evidence in the record supporting the trial court's conclusion. *Compare Geriatrics, Inc. v. McGee*, Conn.Super.Ct. No. HHBCV155016441S, 2017 WL 715756, *9 (Jan. 11, 2017) (concluding that the nursing facility's fraudulent-misrepresentation claim was properly dismissed because "there [was] no evidence that [the attorney in fact] made any representations at all to the plaintiff prior to [his mother's] admission to [the nursing facility]"), *overruled in part on other grounds*, 332 Conn. 1, ___ A.3d ___ (2019). Specifically, Stacy Fairchild ("Fairchild"), a "registered social worker assistant" who "also help[s] with all the admissions and discharges" at Vancrest, testified that she met with Mullenhour on January 4, 2017 to effectuate the admission of Hohlbein. (Oct. 4, 2018 Tr. at 6, 12). Fairchild testified that Mullenhour asserted (by way of the agreement) that she had access to "her mother's funds." (*Id.* at 15). Fairchild further testified on cross-examination that Mullenhour did not "make any misrepresentations about assets of her mother." (*Id.* at 34). Likewise, Fairchild and Laura Brio ("Brio"), the accounts-receivable manager at Vancrest, testified that they never discussed Hohlbein's assets with Mullenhour. (Oct. 4, 2018 Tr. at 35-39, 43, 63).

**{¶24}** Nevertheless, Vancrest's argues that "[b]y executing the Agreement, [Mullenhour], by a positive statement, implied and affirmed knowledge concerning the nature and extent of [Hohlbein's] assets and her level of control over those assets" because

> [p]aragraph C3 of the Agreement itself makes clear both an assertion of a fact (control over resources) and Vancrest's reliance:
>
> **Legal Authority to Access Resident's Funds**.  You have asserted that the Representative has legal access to and control over the Resident's income, assets, personal and real property, and resources, including but not limited to, social security, pension or retirement funds, annuities, insurance, bank accounts, and mutual funds (collectively, "Resources"); and *You understand that Vancrest is entering into this Agreement in reliance on that assertion*.  (Emphasis added.)

(Emphasis sic.)  (Appellant's Reply Brief at 7, quoting Doc. No. 23, Ex. A).[11]  In support of its argument, Vancrest directs us to interrogatory responses of Mullenhour "demonstrat[ing] that [Mullenhour] asserted that she did not have control of her mother's finances, that she did not know who else had control of her mother's finances, and that she did not even know what assets her mother owned at the date of admission."  (*Id.*, citing Oct. 4, 2018 Tr. at 71-80).  (*See also* Plaintiff's Exs. 5, 6).

---

[11] Although we are expressing no opinion as to the propriety of this provision of the agreement, we again note that there may be a cognizable argument pertaining to the provision under the Nursing Home Reform Act.

**{¶25}** However, contrary to Vancrest's argument, we are not convinced that this evidence reflects that Mullenhour fraudulently misrepresented anything regarding Hohlbein's "Resources"—that is, this evidence is not some competent, credible evidence that Mullenhour (1) knowingly (or with such utter disregard as to whether it is true or false that knowledge may be inferred) made any false representation or (2) made any false representation with the intent of misleading Vancrest into relying on it. *Compare McGee*, 2017 WL 715756, at \*9 (concluding that the nursing facility failed to prove that "McGee knew at the time he completed the financial disclosure form that the information regarding his mother's financial condition was untrue"). Mullenhour testified on cross-examination that she had access to Hohlbein's "assets," and that she agreed to pay Vancrest from her mother's "assets." (Oct. 4, 2018 Tr. at 69). Although Mullenhour testified that she responded "no" to interrogatories asking whether she "controlled [her] mother's finances during her stay at Vancrest," she clarified that her response meant that she had a "power of attorney for her, [she] did not control her finances." (*Id.* at 71-72); (Plaintiff's Exs. 5, 6). (*See also* Oct. 4, 2018 Tr. at 73). She further testified that she answered the interrogatories truthfully. (Oct. 4, 2018 Tr. at 75).

**{¶26}** Moreover, Vancrest refutes its own argument with its assertion that Mullenhour "did not even know what assets her mother owned at the date of admission." (Appellant's Reply Brief at 7, citing Oct. 4, 2018 Tr. at 78-79). Indeed,

Mullenhour testified that she did not know what "Resources" her mother had at the time of her admission. (Oct. 4, 2018 Tr. at 78-79, 92). *See McGee*, 2017 WL 715756, at *9. In particular, she testified that she did not know that Hohlbein had an annuity at the time she was admitted to Vancrest. (Oct. 4, 2018 Tr. at 79). Therefore, we conclude that there is no evidence in the record that Mullenhour knowingly (or with such utter disregard as to whether it is true or false that knowledge may be inferred) made any false representation or that Mullenhour made any false representation with the intent of misleading Vancrest into relying on it. Accordingly, for these reasons, we conclude that the trial court did not err by dismissing Vancrest's fraudulent-misrepresentation claim.

*Fraudulent Misappropriation*

{¶27} Turning to Vancrest's fraudulent-misappropriation claim, we likewise conclude that the trial court did not err by dismissing it. Under its fraudulent-misappropriation claim, Vancrest argues that Mullenhour violated the Ohio Uniform Fraudulent Transfer Act ("UFTA"), codified under R.C. Chapter 1336, when "the annuity was effectively transferred by an operation of law to [Mullenhour] despite the existence of a known creditor." (Appellant's Brief at 17).

{¶28} Ohio's UFTA "creates a right of action for a creditor to set aside a fraudulent transfer of assets to the extent necessary to satisfy the creditor's claim." *Kingston of Miamisburg LLC v. Jeffery*, 2d Dist. Montgomery No. 28087, 2019-

Ohio-1905, ¶ 17, citing *UAP-Columbus JV326132 v. Young*, 10th Dist. Franklin No. 09AP-646, 2010-Ohio-485, ¶ 25. *See also* R.C. 1336.07. Under Ohio's UFTA, "'fraud is imputed to the debtor when the statutory elements have been met.'" *Jeffery* at ¶ 17, quoting *In re Youngstown Osteopathic Hosp. Assn.*, 280 B.R. 400, 408 (Bankr.N.D.Ohio 2002), citing *Comer v. Calim*, 128 Ohio App.3d 599, 606 (1st Dist.1998).

{¶29} "'The Ohio [UFTA] provides various ways in which a creditor can prove that a debtor's transfer of property was fraudulent.'" *Id.* at ¶ 17, quoting *DiBlasio v. Sinclair*, 7th Dist. Mahoning No. 08-MA-23, 2012-Ohio-5848, ¶ 34. The Ohio UFTA's "key operative provisions are R.C. 1336.04 and R.C. 1336.05." *Id.* "[I]rrespective of when the debt arose, a creditor may prove that the contested asset transfer met the R.C. 1336.04(A) elements, and, thus, was a fraudulent transfer as defined by this provision." *Id.*, citing *E. Savs. Bank v. Bucci*, 7th Dist. Mahoning No. 08 MA 28, 2008-Ohio-6363, ¶ 93 and *In re Youngstown Osteopathic Hosp. Assn.* at 408-409. "As to a debt that existed when the debtor made the contested asset transfer, a creditor may prove that the transfer met the R.C. 1336.05(A) elements, and, thus, was a fraudulent transfer as statutorily defined." *Id.*, citing *Bucci* at ¶ 93.

{¶30} Vancrest argues that it is entitled to recovery only under R.C. 1336.04, which sets forth a provision for actual fraud as well as a provision for constructive

fraud. However, because it is the only provision under which Vancrest asserts that it is entitled to recovery, we will address only whether it presented the sufficient quantum of evidence of actual fraud under R.C. 1336.04(A)(1).

R.C. 1336.04(A)(1) provides as follows:

(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

"While the creditor seeking to set aside a transfer as fraudulent has the ultimate burden of proving, by clear and convincing evidence, the debtor's intent pursuant to R.C. 1336.04(A)(1), Ohio has recognized that proof of actual intent will often be impossible to procure." *Blood v. Nofzinger*, 162 Ohio App.3d 545, 2005-Ohio-3859, ¶ 36 (6th Dist.), citing *Wagner v. Galipo*, 97 Ohio App.3d 302, 309 (8th Dist.1994), citing *Stein v. Brown*, 18 Ohio St.3d 305, 308 (1985). *See also Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App.3d 651, 673 (8th Dist.1999), fn. 23. "Thus, direct evidence of fraudulent intent is not essential." *Blood* at ¶ 36, citing *Galipo* at 309. "A creditor may still establish a debtor's actual fraudulent intent if the circumstances demonstrate 'badges of fraud.'" *Id.* The traditional "badges of fraud," which accompany actual fraudulent intent are statutorily defined:

(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

R.C. 1336.04(B).

**{¶31}** Consideration of actual intent is not limited to the statutory factors; rather, actual intent is determined from the facts and circumstances of each case.

*Blood* at ¶ 49, citing R.C. 1336.04(B), *Mayne* at 665, and *Sanderson Farms, Inc. v. Gasbarro*, 10th Dist. Franklin No. 01AP-461, 2004-Ohio-1460, ¶ 41. "If the party alleging fraud is able to demonstrate a sufficient number of 'badges,' an inference of actual fraud arises and the burden then shifts to the defendant to prove that the transfer was not fraudulent." *Id.*, citing *Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.*, 87 Ohio App.3d 644, 650 (10th Dist.1993), *Mayne* at 662, and *Abood v. Nemer*, 128 Ohio App.3d 151 (9th Dist.1998).

{¶32} Contrary to Vancrest's contention that the trial court "made no specific reference to this cause of action, * * * other than to state that [Fairchild] had no knowledge of a misappropriation of funds," Vancrest ignores the trial court's finding (based on the evidence presented by Vancrest) that Mullenhour "was not personally liable out of her own money to pay the bill." (Appellant's Brief at 16-17); (Doc. No. 43). The trial court's finding that Mullenhour was not personally liable for Hohlbein's bill is supported by some, competent credible evidence. In other words, Vancrest did not present any evidence that Mullenhour is a *debtor* within the meaning of R.C. Chapter 1336. *Compare McGee*, 332 Conn. at 17 (clarifying "that the CUFTA claim in this appeal does not allege that the defendant/agent is personally *liable* on the claim (i.e., the debt for [his mother's] nursing home services) and hence *legally is the debtor*"). Ohio's UFTA defines "debtor" as "a person who is liable on a *claim*." R.C. 1336.01(F). The Ohio UFTA

defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." R.C. 1336.01(C).

**{¶33}** Here, Vancrest did not present any evidence that Mullenhour is liable on a claim—that is, Vancrest did not present any evidence that Mullenhour is personally liable for Hohlbein's nursing-facility bill. *See Arrow Uniform Rental, L.P. v. Longazel*, 8th Dist. Cuyahoga No. 91536, 2009-Ohio-868, ¶ 47 (concluding "that none of the defendants in this case were a 'debtor' of Arrow"); *McGee*, 332 Conn. at 17. Rather, it presented evidence that Mullenhour declined to be personally liable for Hohlbein's debt. (*See* Doc. No. 23, Ex. A); (Oct. 4, 2018 Tr. at 25-26, 69). (*See also* Oct. 4, 2018 Tr. at 47). Indeed, Fairchild testified that Hohlbein, who was competent at the time, executed the agreement in her individual capacity, and (as we previously addressed) Mullenhour executed the agreement as Hohlbein's "Representative" in her capacity as Hohlbein's attorney in fact. (Oct. 4, 2018 Tr. at 32-33, 36-37). *See Presbyterian Med. Ctr. v. Budd*, 2003 PA Super. 323, 832 A.2d 1066, ¶ 17, 19. Therefore, based on the evidence presented by Vancrest, Hohlbein—not Mullenhour—is the debtor of Vancrest within the meaning of R.C. Chapter 1336.[12] *See McGee*, 332 Conn. at 18, 23. *See also Arrow* at ¶ 47-48; *Budd* at ¶ 21.

---

[12] Hohlbein—the debtor—is not a party to this case. Accordingly, we need not address whether the law of agency applies. *See Geriatrics Inc. v. McGee*, 332 Conn. 1, 4-5, 17-18, 23, ___ A.3d ___ (2019).

**{¶34}** Moreover, Vancrest did not present any evidence that *Mullenhour* caused Hohlbein's annuity to transfer; rather, the evidence is clear that the annuity transferred by operation of law to Mullenhour's father upon Hohlbein's death in accordance with the terms of the annuity as negotiated by the Hohlbeins. (Oct. 4, 2018 Tr. at 88-89). Indeed, Mullenhour testified that she did not speak with a representative from the company that managed the annuity until after Hohlbein's death, and her purpose for contacting the company at that time was to notify it that her mother had died. (*Id.* at 89). Here, the annuity did not transfer to Mullenhour until her father's death. (*Id.* at 88-89). In other words, there is no evidence of any intent (on the part of Mullenhour as the *second* transferee) that can be imputed to Hohlbein (the debtor). *Compare Schempp v. Lucre Mgt. Group, LLC*, 18 P.3d 762, 765 (Colo.App.2000) (concluding that "the intent of the transferee can be imputed to the debtor when the transferee is in a position to dominate or control the disposition of the debtor's property" for purposes of Colorado's UFTA); *Mayne* at 663-667 (discussing the transfers initiated by Mayne to herself as evidence "to raise a question of fact under R.C. 1336.04(A)(1) concerning the existence of actual intent to hinder, delay, or defraud the nursing home as a future creditor in the case at bar"). *See McGee*, 332 Conn. at 23. Likewise, Fairchild testified that she did not have any knowledge whether Mullenhour misappropriated any of Hohlbein's assets. (*Id.* at 34).

{¶35} Accordingly, based on the facts and circumstances presented by this case, there is no competent, credible evidence in the record that Mullenhour qualifies as a "debtor" for purposes of R.C. Chapter 1336. *See McGee*, 332 Conn. at 17, 23; *Woodard v. Funderburk*, 846 So.2d 363, 366 (Ala. App.2002) (concluding that "the transferor/attorney-in-fact * * * was not [the] 'debtor' within the meaning of the Alabama [UFTA]"); *Hutchison v. Trilogy Health Servs., LLC*, 2 N.E.3d 802, 807 (Ind.App.2014) (noting that "the facts of this case stand in contrast to a situation in which a son or daughter possessed a power of attorney over the parent's financial affairs, or where that adult child misappropriated his or her parent's bank account funds rather than pay the nursing home facility"), citing *Sunrise Healthcare Corp. v. Azarigian*, 76 Conn.App. 800, 821 A.2d 835, 837 (2003). *See also Budd* at ¶ 21; *Folmar & Assocs. LLP v. Holberg*, 776 So.2d 112, 117, (Ala.2000) (concluding that "Holberg's claims are missing one essential element for a cause of action pursuant to the Alabama [UFTA]: The transfer of property by the debtor."), *overruled on other grounds*, *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So.3d 5 (Ala.2009); *Methodist Manor Health Center, Inc. v. Py*, 307 Wis.2d 501, 515, 746 N.W.2d 824 (2008) (rejecting an argument to extend Wisconsin's UFTA to create liability of an attorney in fact who is not a debtor within the meaning of the statute). For these reasons, we conclude that the trial court did not err by dismissing Vancrest's fraudulent-misappropriation claim.

*Unjust Enrichment*

**{¶36}** Finally, Vancrest argues that the trial court erred by dismissing its unjust-enrichment claim after concluding that it "did not prove that Mrs. Mullenhour was unjustly enriched." (Doc. No. 43). Vancrest contends that the trial court improperly dismissed its unjust-enrichment claim because (1) its unjust-enrichment claim is an alternative claim to its breach-of-contract claim and (2) because it presented undisputed evidence that it "provided a significant benefit to [Mullenhour] by providing services for a loved member of her family." (Appellant's Reply Brief at 9).

**{¶37}** "Unjust enrichment is an equitable doctrine based on a quasi-contract rather than contract law." *Smith Clinic v. Savage*, 3d Dist. Marion No. 9-12-40, 2013-Ohio-748, ¶ 30, citing *Homan, Inc. v. A1 AG Servs., L.L.C.*, 125 Ohio App.3d 51, 2008-Ohio-277, ¶ 21 (3d Dist.). *See also Hummel v. Hummel*, 133 Ohio St. 520, 525-528 (1938). "Unjust enrichment occurs under Ohio law 'when a party retains money or benefits which in justice and equity belong to another.'" *Padula v. Wagner*, 9th Dist. Summit No. 27509, 2015-Ohio-2374, ¶ 47, quoting *Liberty Mut. Ins. Co. v. Indus. Commn. of Ohio*, 40 Ohio St.3d 109, 111 (1988), quoting *Stan-Clean of Lexington, Inc. v. Stanley Steemer Internatl., Inc.*, 2 Ohio App.3d 129, 131 (10th Dist.1981). To prevail on an unjust-enrichment claim, a plaintiff must prove: "'(1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the

defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances in which it would be unjust to do so without payment.'" *Savage* at ¶ 30, quoting *Warneck v. Chaney*, 194 Ohio App.3d 459, 2011-Ohio-3007, ¶ 21 (3d Dist.), citing *City Rentals, Inc. v. Kesler*, 191 Ohio App.3d 474, 2010-Ohio-6264, ¶ 12 (3d Dist.), citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

**{¶38}** "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." *Padula* at ¶ 48, citing *Ullmann v. May*, 147 Ohio St. 468 (1947), paragraph four of the syllabus, and *Wochna v. Mancino*, 9th Dist. Medina No. 07CA0059-M, 2008-Ohio-996, ¶ 18. *See also Savage* at ¶ 30 ("This Court has previously held that 'the doctrine of unjust enrichment cannot apply when an express contract exists.'"), quoting *Nationwide Mutual Fire Insurance Co. v. Delacruz*, 3d Dist. Hancock No. 5-10-17, 2010-Ohio-6068, ¶ 21, citing *Bickham v. Standley*, 183 Ohio App.3d 422, 2009-Ohio-3530, ¶ 14 (3d Dist.).

**{¶39}** In its second amended complaint, Vancrest alleged that it is entitled to recovery under the theory of unjust enrichment because it "provided healthcare services and support to Wanda Hohlbein"; that Mullenhour "knew and accepted the benefit of the services and support of [sic] provided to her mother"; and that

> [i]t would be unjust and inequitable to allow [Mullenhour] to retain the benefit of the services provided to her mother, Wanda Hohlbein, and permit her to retain the remaining funds of Wanda Hohlbein without directing those funds to [Vancrest] for the remaining balance.

(Doc. No. 23). As an essential element of a claim for unjust enrichment, Vancrest was required to prove that it conferred a benefit upon Mullenhour. *See Wadsworth Pointe Health Care Group, Inc. v. Baglia*, 9th Dist. Medina No. 17CA0064-M, 2018-Ohio-1978, ¶ 22, citing *Chaffee Chiropractic Clinic, Inc. v. Stiffler*, 9th Dist. Wayne No. 16AP0033, 2017-Ohio-7790, ¶ 24. However, similar to the facts presented to our sister appellate district in *Baglia*, Vancrest's second amended complaint alleges only that Mullenhour obtained the benefit and value of nursing care services and support rendered to Hohlbein. *Compare id.* ("However, the complaint alleges only that Ms. Baglia obtained the benefit and value of nursing care and residence rendered *to her mother*."). *See also McGee*, 2017 WL 715756, at *7 (addressing a nursing facility's unjust-enrichment claim and concluding that the nursing facility "failed to prove that it conferred any benefit directly upon [the resident's son]. Rather, the services for which [the nursing facility] seeks recovery are for benefits conferred directly upon" the resident). Here, Vancrest "did not allege any basis other than the admission agreement for holding [Mullenhour] personally liable for the benefit of services conferred, not on [Mullenhour], but on her mother." *Baglia* at ¶ 22. *See also Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 10th Dist. Franklin No. 16AP-748, 2017-Ohio-1462, ¶ 27 (upholding the dismissal of an unjust-enrichment claim after concluding that "the connection between Three-C and Nationwide is too indirect to constitute a 'benefit conferred'

for purposes of a common law claim of unjust enrichment"), citing *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 20; *Directory Servs. Group v. Staff Builders Intern.*, Inc., 8th Dist. Cuyahoga No. 78611, 2001 WL 792715, *2 (rejecting the plaintiff's unjust-enrichment claim based on an allegation of an indirect benefit conferred on the defendant).

{¶40} On appeal, although Vancrest contends that its unjust-enrichment claim is an alternative claim to its breach-of-contract claim, it nevertheless argues that it is entitled to recover from Mullenhour under the theory of unjust enrichment based on the provisions of the agreement. (*See* Appellant's Brief at 18). Vancrest's argument confuses the distinction between the existence of a contract and the ability to recover under a contract. *Compare Baglia* at ¶ 24 (noting that the nursing-facility's "argument appears to obscure the distinction between the existence of a contract and the ability to recover on a contract"). Importantly, as we previously addressed, there is no dispute that Mullenhour expressly declined personal liability for the charges and fees associated with the services provided to Hohlbein as a resident of Vancrest. *See id.* at ¶ 23. Even though there may be circumstances under which a party may be able to assert a claim for recovery under a theory of unjust enrichment where no valid agreement exists, "Ohio law does not permit [Vancrest] to maintain an equitable claim for unjust enrichment as a fail-safe in the event that it does not recover on its contract claim." *Id.* at ¶ 24, citing *Wochna* at ¶ 18.

Therefore, because Mullenhour's relationship with Vancrest is governed by an express agreement regarding the subject matter of the claim, Vancrest "'may not invoke equity' to circumvent the admission agreement declaring the financial obligations and responsibilities of [Mullenhour]." *Id.*, citing *Padula* at ¶ 50. *See also Savage*, 2013-Ohio-748, at ¶ 30. Accordingly, the trial court did not err by dismissing Vancrest's unjust-enrichment claim.

**{¶41}** In sum, we note that Vancrest had a remedy for the outstanding balance on Hohlbein's account; however, it chose not to pursue that remedy. *See Budd*, 2003 PA Super. 323, 832 A.2d 1066, at ¶ 21 (noting that the nursing-facility's claim was an issue to be "raised in Orphan's Court during an accounting of Mother's estate"). However, for the reasons discussed in this opinion, Vancrest is without the remedy it wants to have and now seeks. *See Meadowbrook Ctr., Inc. v. Buchman*, 149 Conn.App. 177, 222, 90 A.3d 219 (2014) (Schaller, J., concurring) (noting that the nursing facility "was not without a remedy for the defendant's breach but, instead, is simply without the remedy it wants to have and now seeks").

**{¶42}** Therefore, we conclude that the trial court did not err by dismissing Vancrest's complaint and its assignments of error are overruled.

{¶43} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**