[Cite as *Village at the Greene v. Smith*, 2020-Ohio-4088.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| VILLAGE AT THE GREENE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28762 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-2258 |
| | : | |
| ROBERT SMITH, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of August, 2020.

. . . . . . . . . . .

ROBERT C. WIESENMAYER, Atty. Reg. No. 0007207, 15 Willipie Street, Suite 300, P.O. Box 299, Wapakoneta, Ohio 45895
        Attorney for Plaintiff-Appellant

DAVID D. BRANNON, Atty. Reg. No. 0079755, 130 West Second Street, Suite 900, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} HCF of Crestview, Inc., doing business as Village at the Greene ("Village"), appeals from the trial court's entry of summary judgment in favor of Robert D. Smith ("Smith") as to the unpaid account of Smith's father, Robert Smith ("Father"), a Village resident. The judgment of the trial court will be affirmed.

## Factual and Procedural Background

{¶ 2} Village is a licensed skilled nursing facility located in Dayton, Ohio.. Smith is the adult son of Father, who on June 22, 2018, granted Smith power of attorney to act on Father's behalf. Father "is considered blind and deaf." (Complaint, ¶ 2 and Exh. C.)

{¶ 3} On October 10, 2018, Smith executed a "Consent to Treat & Admission Agreement" in order for Father to become a resident at Village. (Complaint, Exh. A.) Smith signed the first page of that six-page contract on the line designated for "REPRESENTATIVE." Among the provisions of the form contract, supplied by Village, were the following:

EXHIBIT A

Potential for Discharge & Personal Guarantee of Payment

The Facility [Village] cannot continue to provide services without payment.

If the Facility is not paid timely and in full by someone, then it will seek to discharge the Resident.

Many people wish to make sure that care and services to their loved ones are not terminated when the resident does not have the resources to pay for care. This could happen, for example, if third party payment (Medicare, Medicaid, Insurance) were to be temporarily interrupted, delayed, or not approved. Thus, we provide the opportunity for Representatives to make

payments on the Resident's behalf.

If the Representative would like to protect the Resident from being discharged for non-payment by agreeing to pay on their behalf if it becomes necessary, then he/she should initial "yes" below.

If the Representative does not wish to protect the Resident from being discharged for non-payment by agreeing to pay on their behalf if it becomes necessary, then he/she should initial "no" below.

BY INITIALING "YES", THE REPRESENTATIVE IS AGREEING TO VOLUNTARILY PERSONALLY GUARANTEE PAYMENT TO THE FACILITY, BE JOINTLY AND SEVERALLY LIABLE FOR ALL SERVICES AND SUPPLIES RECEIVED BY THE RESIDENT, AND TO MAKE ALL PAYMENTS WHEN THEY COME DUE. THE REPRESENTATIVE UNDERSTANDS THAT HE OR SHE IS NOT REQUIRED BY LAW OR THE FACILITY TO PERSONALLY GUARANTEE PAYMENT. THE REPRESENTATIVE AGREES THAT THIS GUARANTEE WILL CONTINUE UNTIL ALL FINANCIAL OBLIGATIONS TO THE FACILITY HAVE BEEN PAID IN FULL.

*Please initial below.*

Representative     Yes _____     No _____

(Emphasis sic.) (Complaint, Exh. A, attached Exh. A.) Smith placed his initials on the "no" line.

{¶ 4} An additional exhibit to the contract, entitled "Representative Authority & Duties," provided that, as Father's representative, Smith "ha[d] legal access to and control

over" Father's assets and resources (Complaint, Exh. A, attached Exh. C, ¶ C3), and "shall act in a fiduciary capacity on [Father's] behalf to satisfy [Father's] financial obligations" under the contract with Village. (*Id.* at ¶ C2.) The contract provided that Smith, as Father's representative, could be personally liable for failing to pay Father's debt to Village from Father's resources under two circumstances:

> * * * if any of [Father's] Resources transfer by operation of law while [Father] still has outstanding debts to [Village] and such transfer causes [Father's] remaining resources to be insufficient to pay the debt in full, then the Representative [Smith] agrees to be personally responsible for the remaining debt to [Village]. You agree that if You [sic] have misrepresented the Representative's legal authority to control [Father's] Resources or to enter into this Agreement on behalf of [Father], or if the Representative has misrepresented any information to [Village] as part of the admission process, then the Representative agrees to be personally liable for all of [Father's] responsibilities in this Agreement.

(*Id.* at ¶ C3.)

{¶ 5} Exhibit C to the contract also obligated Smith, as Father's representative, to "cooperate fully in any application, redetermination or appeals process related to Medicaid eligibility." (*Id.* at ¶ C6.) It further provided:

> The Representative agrees to pay from his/her own resources any unpaid charges due to the Facility as a result of the Representative's failure to cooperate in the Medicaid eligibility or redetermination process, or appeals thereto. "Failure to cooperate" shall include, but is not limited to, failing to

provide documentation to the Medicaid agency in the time frames defined by law or as indicated by the relevant representative of the Medicaid agency.

(*Id.*)

{¶ 6} On May 16, 2019, Village filed a complaint naming as defendants Father and Smith, as "Power of Attorney for [Father]," and setting forth claims for breach of contract and unjust enrichment. The complaint alleged that Father's account at Village was $63,860.21 in arrears as of March 20, 2019. As to Smith, the complaint alleged a breach of the contract with Village due to Smith's "fail[ing] to apply [Father's] personal funds" to pay Father's charges at Village and "fail[ing] to comply with the requirements of Medicaid so as to qualify [Father] for benefits of the Medicaid program" that would pay Father's long-term care expenses at Village. (Complaint, ¶ 14.) The complaint further alleged that Smith was unjustly enriched because Father received the benefit of Village's care and services without paying for such. Village sought judgment against Father and Smith in the amount of $63,860.21 plus interest, attorney's fees, and costs.

{¶ 7} Father did not respond to the complaint. On August 30, 2019, Smith filed an answer generally denying liability and asserting various affirmative defenses. [1] Thereafter, Smith filed a motion for summary judgment pursuant to Civ.R. 56(C). He asserted that he had resigned as Father's attorney-in-fact on August 9, 2019.[2] (*See*

---

[1] The record indicates that Smith was not served until August 6, 2019. (*See* Return of Service (Personal), 8/14/19.)

[2] The record indicates that Father also granted power of attorney to Smith's sister, Tiffany Smith, who apparently remains available to serve in that capacity following Smith's resignation. (*See* [Village]'s Memorandum Contra [Smith]'s MSJ, Exh. A-1 (Smith's Answers to Interrogatories), ¶ 11, 20 and Exh. C-1.)

Defendant Robert D. Smith's Motion for Summary Judgment ("MSJ"), p. 2 and Exh. A, Affidavit of Robert D. Smith ("Smith Affid."), ¶ 2; *see also* Exh. C (copy of "Resi[g]nation of General Durable Power of Attorney".) Consequently, Smith maintained that he remained in this action only "in his own individual capacity" and that he bore no personal responsibility for Father's alleged indebtedness to Village. He also claimed that dismissal was warranted because Village had failed to effect service on Father, a "necessary party."

{¶ 8} On March 5, 2020, the trial court issued a decision granting Smith's motion for summary judgment. That decision indicated that it was "a final appealable order, and there is not just cause for delay for purposes of Civ.R. 54." Additionally, on March 18, 2020, the court entered default judgment against Father.

{¶ 9} Village filed a timely appeal from the judgment in Smith's favor, identifying these assignments of error:

1) The Trial Court erred when it found that [Smith] was not a party to the Contract, because [Smith] signed the Agreement as a Representative of [Father], and noted he did not want to be personally liable.

2) The Trial Court erred when it state[d:] "While this alleged failure of [Smith] (by failing to use [Father]'s resources to pay the expenses and failing to comply with the requirements of Medicaid) may be a breach of [Smith]'s obligations to [Father as] his father's attorney-in-fact, it does not create personal liability to [Village]."

3) The Trial Court erred by granting [Smith] Summary Judgment as to the claim for breach of contract based upon the evidence presented to the Trial Court.

(Parenthetical sic.)

{¶ 10} Despite setting forth those three assignments of error, Smith's appellate brief actually addresses only this single issue:

It [wa]s error for the Trial Court to deny Village at the Greene the right to the enforcement of the terms and obligations required of the Representative on page 4 (Exhibit C) of the Admission Agreement, which are expressly included to overcome the limitations existing in the inability of * * * Village at the Greene to enforce the fiduciary powers in the Resident's Power of Attorney granted to the Agent, who is also the Representative. The law of agency applies to the enforcement of the Power of Attorney while the law of contract applies to the enforcement of the Admission Agreement.[3]

**Standard of Review**

{¶ 11} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

{¶ 12} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in

---

[3] As neither Village's assignments of error nor the actual argument in its brief appear to challenge the trial court's grant of summary judgment against Village on its unjust enrichment claim, we will not address that claim on this appeal.

favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); Civ.R. 56(E). Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

**Village's Appeal**

{¶ 13} Village contends that the trial court erred by finding that Smith was not personally liable for Father's debt pursuant to the contract provisions that required Smith, as Father's representative, both to use Father's resources to pay his (Father's) expenses at Village and to cooperate in attempting to secure Medicaid benefits toward the payment of Father's expenses. Village maintains that enforcing such provisions would not make Smith a personal guarantor as to Father's expenses, but rather would hold Smith personally liable for breaching his own contractual obligations to undertake measures to assure that Father's expenses were paid.

a. *Law applicable to breach of contract claim*

{¶ 14} "To prove a breach of contract claim, a plaintiff must show 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.' " *Nilavar v. Osborn*, 137 Ohio App.3d 469,483-484, 738 N.E.2d 1271 (2d Dist.2000), quoting *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.

1994). However, " '[a] contract is binding only upon parties to a contract and those in privity with them.' " *Vancrest Mgt. Corp. v. Mullenhour*, 2019-Ohio-2958, 140 N.E.3d 1051, ¶ 13 (3d Dist.), quoting *Gilchrist v. Saxon Mtge. Servs.*, 10th Dist. Franklin No. 12AP-556, 2013-Ohio-949, ¶ 23.

{¶ 15} When an individual acting on another's behalf pursuant to a power of attorney "discloses in the contract that it [the contract] is being entered into in the representative capacity of the attorney in fact, the attorney in fact is not personally liable on the contract, unless the contract otherwise specifies." R.C. 1337.092(A).

> If the words or initialism "attorney in fact," "as attorney in fact," "AIF," "power of attorney," "POA," or any other word or words or initialism indicating representative capacity as an attorney in fact are included in a contract following the name or signature of an attorney in fact, the inclusion is sufficient disclosure for purposes of this division that the contract is being entered into in the attorney in fact's representative capacity as attorney in fact.

*Id.*

{¶ 16} An attorney in fact is not personally liable for a debt of his or her principal unless one or more of the following applies:

> (1) The attorney in fact agrees to be personally responsible for the debt.
>
> (2) The debt was incurred for the support of the principal, and the attorney in fact is liable for that debt because of another legal relationship that gives rise to or results in a duty of support relative to the principal.
>
> (3) The negligence of the attorney in fact gave rise to or resulted in the debt.

(4) An act of the attorney in fact that was beyond the attorney in fact's authority gave rise to or resulted in the debt.

(5) An agreement to assist in the recovery of funds under section 169.13 [dealing with the collection of unclaimed funds] of the Revised Code was the subject of the power of attorney that gave rise to or resulted in the debt.

R.C. 1337.092(B).

b.      *Analysis*

{¶ 17} Both in opposing summary judgment in the trial court and on this appeal, Village has maintained that Smith breached the contract with Village "in his individual capacity, not as Power of Attorney for" Father, allegedly making Smith subject to individual liability regardless of his later resignation as Father's attorney-in-fact. ([Village]'s Memorandum Contra [Smith]'s MSJ filed on 2/28/20, p. 2; *see also* Brief of Appellant [Village], p. 9 (noting that Smith signed the contract "under the heading of 'Representative,' " not on the "Resident" line as power of attorney for Father)). Contrary to that position, however, Village's complaint identified Smith as a defendant exclusively as "Power of Attorney for [Father]," not in his individual capacity (Complaint, p. 1) and further alleged that Smith executed the contract with Village "acting by his Power of Attorney" (*id.* at ¶ 6), and was bound by and breached the contract's terms "in his capacity as Power of Attorney for [Father]." (*Id.* at ¶ 9, 13, 14.) Village also acknowledged that it was aware of and received a copy of Smith's power of attorney. (*Id.* at ¶ 10, 15 and Exh. C.)

{¶ 18} Based on the record, despite Smith's failure to sign the contract on the "Resident" line and specifically designate himself as power of attorney for Father, Smith

was acting as Father's attorney-in-fact rather than in his individual capacity when he executed the contract with Village as Father's "Representative." Given that fact, Village waived any argument that Smith is subject to individual liability under one of statutory exceptions set forth at R.C. 1337.092(B), as Village "did not raise the applicability of the statute in its * * * complaint" or in opposition to Smith's motion for summary judgment. *See Vancrest Mgt. Corp.*, 2019-Ohio-2958, 140 N.E.3d 1051, at ¶ 16.

{¶ 19} Furthermore, and perhaps most compellingly, we conclude that Smith, in executing the contract with Village as Father's representative (whether through his power of attorney or otherwise), did not become subject to individual liability for the expenses incurred for Father's care. Smith specifically disclaimed in writing any intent or willingness to assume personal responsibility for Father's charges. (Complaint, Exh. A, attached Exh. A.) Village attempted to override that declaration by arguing that Smith is personally liable for the breach of contract terms that required him to pay Father's expenses from Father's assets and for his alleged "failure to cooperate" in attempting to secure Medicaid benefits for Father's expenses. Reviewing the matter de novo, we agree with the trial court's conclusion that Village may not employ this "breach of contract" rationale to impose personal liability on Smith where the involuntary imposition of such responsibility is prohibited by both state and federal law.

{¶ 20} Under 42 U.S.C. 1396r(c)(5)(A)(ii), "a nursing facility must * * * not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility." That provision "shall not be construed as preventing a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (*without*

*incurring personal financial liability*) to provide payment from the resident's income or resources for such care." (Emphasis added.) 42 U.S.C. 1396r(c)(5)(B)(ii).

{¶ 21} Further, under 42 C.F.R. 483.15(a)(3), a nursing facility

must not request or require a third party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility may request and require a resident representative who has legal access to a resident's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the resident's income or resources.

(Emphasis added.)

{¶ 22} Similarly, Ohio's administrative regulations governing "NFs" (nursing facilities) state:

A provider of a NF shall not:

* * *

(4) [r]equire a third party to accept personal responsibility for paying the facility charges out of his or her own funds. However, the facility may require a representative who has legal access to an individual's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the individual's income or resources if the individual's medicaid application is denied and if the individual's cost of care is not being paid by medicare or another third-party

payor. A third-party guarantee is not the same as a third-party payor (i.e., an insurance company), and this provision does not preclude the facility from obtaining information about medicare and medicaid eligibility or the availability of private insurance. *The prohibition against third-party guarantees applies to all individuals and prospective individuals in all certified NFs regardless of payment source.* This provision does not prohibit a third party from voluntarily making payment on behalf of an individual.

(Emphasis added.) Ohio Adm.Code 5160-3-02(C)(4).

{¶ 23} Although other Ohio appellate courts have alluded to the implications of 42 U.S.C. 1396r(c)(5)B)(ii) and Ohio Adm.Code 5160-3-02(C)(4) in this context, those decisions ultimately did not determine whether such provisions prohibit the imposition of personal liability on a third-party alleged to have breached an agreement to pay a nursing facility from the nursing facility resident's assets under the third-party's control. *See Vancrest Mgt. Corp.,* 2019-Ohio-2958, 140 N.E.3d 1051, ¶ 19 (finding that nursing facility "waived any argument" that would make such analysis necessary); *Classic Healthcare Sys., LLC v. Faun Miracle*, 12th Dist. Warren No. CA2017-03-029, 2017-Ohio-8540, ¶ 21 (noting that defendant representative of nursing facility resident "neither appealed [judgment at issue] nor * * * argued in defense of [nursing facility's] appeal that the federal and state regulations preclude his personal liability").[4]

---

[4] *But see Faun Miracle* at ¶ 29-33 (S. Powell, P.J., dissenting) ("Although [the representative of the nursing facility resident] has not cross-appealed concerning this issue, I am also compelled to disagree with the underlying conclusion that [the nursing facility] was entitled to a personal judgment against [the representative] based upon his breach of the agreement with [the nursing facility]. * * * [T]he agreement [for the

{¶ 24} With that issue now squarely before us as a component of Smith's defense, we determine that a nursing facility may not accomplish through these types of contractual provisions (i.e., requiring a third-party representative to pay the nursing facility from the resident's assets and/or to assist in obtaining government or insurance benefits to pay such charges) what federal and Ohio law strictly forbid: imposing personal liability on a resident's representative who does not voluntarily agree to assume that responsibility. While 42 U.S.C. 1396r(c)(5)(A)(ii) explicitly authorizes a nursing facility to require a third-party with "legal access to a resident's income or resources * * * to sign a contract * * * to provide payment" to the nursing facility from the resident's income or resources, that authorization comes with the express proviso that the third-party signs any such contract "without incurring personal financial liability." 42 C.F.R. 483.15(a)(3), too, provides that a third-party may be required to sign such a contract "without incurring personal financial liability," and Ohio Adm.Code 5160-3-02(C)(4) echoes the same "without incurring personal financial liability" language.

{¶ 25} In direct contravention of the provisions of 42 U.S.C. 1396r(c)(5)(A)(ii), 42 C.F.R. 483.15(a)(3), and Ohio Adm.Code 5160-3-02(C)(4), the form contract that Village required Smith to sign in order to admit Father to Village's care provided that Smith "agree[d] to pay from his/her own resources any unpaid charges due to [Village] as a result of the Representative's [Smith's] failure to cooperate in the Medicaid eligibility process." (Complaint, Exh. A, attached Exh. C, ¶ C6.) Village is not entitled to enforce that provision.

---

representative to pay the nursing facility from the resident's resources] allowed by [42 U.S.C. 1396r(c)(5)(A)(ii) and Ohio Adm.Code 5160-3-02(C)(4)] *cannot create a personal financial liability*." (Emphasis added.)

{¶ 26} Furthermore, as to the contract terms that purported to subject Smith to personal liability for failing to assure that Father's charges were paid from Father's resources under Smith's control (*id.* at ¶ C3), Village did not produce evidence in opposition to Smith's summary judgment motion that demonstrated Father's resources had "transfer[red] by operation of law while [Father] * * * ha[d] outstanding debts to [Village]," or that Smith "misrepresented" to Village any information pertinent to Father's resources or admission. (*See id.*) Absent such evidence, Village failed to sustain its burden to show that a genuine issue of material fact remained regarding Smith's personal liability, even if such personal liability could be imposed in circumstances this record does not even suggest (e.g. self-serving malfeasance by the representative).

{¶ 27} Given that Smith had resigned as Father's attorney-in-fact and Village demonstrated no valid factual or legal basis on which to hold Smith personally liable for Father's indebtedness to Village, the trial court did not err by entering summary judgment in Smith's favor as to Village's complaint in its entirety.

{¶ 28} Village's assignments of error are overruled.

### Conclusion

{¶ 29} For the foregoing reasons, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Robert C. Wiesenmayer
David D. Brannon
Hon. Timothy N. O'Connell