[Cite as *Altercare Newark S., Inc. v. Glasmeier*, 2021-Ohio-3456.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ALTERCARE NEWARK SOUTH, INC., | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| LOIS GLASMEIER, et al., | : | Case No. 2021 CA 0018 |
| | : | |
| Defendants - Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Licking County
                             Municipal Court, Case No. 20 CVF
                             00673


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            September 29, 2021


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

ADAM R. TODD                          JAROD B. ROSE
Florey Todd, LTD.                     Schaller, Campbell & Untied
5 E. Long Street, Suite 600           32 N. Park Place, P.O. Box 309
Columbus, Ohio 43215                  Newark, Ohio 43058

*Baldwin, J.*

{¶1}   Plaintiff-appellant Mark Glasmeier appeals from the February 16, 2021 Final Judgment Entry of the Licking County Municipal Court granting the Motion for Summary Judgment filed by defendant-appellee Altercare Newark South, Inc. and granting judgment in favor of defendant-appellee and against plaintiff-appellant Mark Glasmeier and Lois Glasmeier, jointly and severally, in the amount of $13,547.00 plus interest.

STATEMENT OF THE FACTS AND CASE

{¶2}   At all relevant times, appellant Mark Glasmeier was the son of Lois Glasmeier. Appellee Altercare Newark South, Inc. operates a licensed nursing home in Muskingum County, Ohio. Appellant arranged for his mother to receive care in appellee's facility.

{¶3}   At the time that Lois Glasmeier was admitted to appellee's facility, appellant, as her representative, on October 30, 2018 signed an Admission Agreement.   The Agreement stated, in relevant part, as follows:

{¶4}   2. Exhibits. You agree to abide by all of the terms and conditions of the following exhibits, which are hereby incorporated into this Agreement by reference: Exhibit A-Potential for Discharge & Personal Guarantee of Payment;"…

{¶5}   YOU HAVE READ ALL OF THE TERMS OF THIS AGREEMENT, INCLUDING THE EXHIBITS, AND YOU HAVE HAD AN OPPORTUNITY TO ASK QUESTIONS REGARDING THOSE TERMS.

YOU DO FOR YOURSELF, AND YOUR HEIRS, ADMINISTRATORS AND EXECUTORS, AGREE TO THE TERMS OF THIS AGREEMENT IN CONSIDERATION

OF FACILITY'S ACCEPTANCE OF THE RENDERING OF SERVICES TO THE PATIENT.

{¶6} Exhibit A (Potential for Discharge & Personal Guarantee of Payment) states as follows:

{¶7} Facility cannot continue to provide services without payment. If the facility is not paid timely and in full by someone, then it will seek to discharge the Patient.

{¶8} Many people wish to make sure that care and services to their loved ones are maintained when the Patient does not have the resources to pay for care. Circumstances that may cause non-payment may include, for example when an insurance company no longer provides payment when rehabilitation care has concluded or when Medicaid eligibility has not been maintained or approved. Thus, they agree to make payments on their loved ones' behalf in those instances.

{¶9} BY SIGNING BELOW, THE PERSONAL GUARANTOR IS AGREEING TO VOLUNTARILY PERSONALLY GUARANTEE PAYMENT TO FACILITY, BE JOINTLY AND SEVERALLY LIABLE FOR ALL SERVICES AND SUPPLIES RECEIVED BY THE PATIENT, AND TO MAKE ALL PAYMENTS WHEN THEY COME DUE. THE PERSONAL GUARANTOR UNDERSTANDS THAT HE OR SHE IS NOT REQUIRED BY LAW OR FACILITY TO PERSONALLY GUARANTEE PAYMENT. THE PERSONAL GUARANTOR AGREES THAT THIS GUARANTEE WILL CONTINUE UNTIL ALL FINANCIAL OBLIGATIONS TO FACILITY HAVE BEEN PAID IN FULL.

{¶10} Appellant signed the same as guarantor.

{¶11}  On March 16, 2020, appellee filed a complaint for breach of contract against appellant and Lois Glasmeier, for breach of personal guarantee against appellant and for unjust enrichment against Lois Glasmeier. Appellee, in its complaint, alleged that it had provided nursing care and services to Lois Glasmeier and that the defendants had breached the Admission Agreement by refusing to make full payment.  Appellee further alleged that appellant Mark Glasmeier had breached the personal guarantee and that it was unjust for Lois Glasmeier to retain the benefit of its services without payment. Appellee sought judgment against appellant and Lois Glasmeier, jointly and severally, in the amount of $13,547.00 plus interest.

{¶12}  On August 3, 2020, appellant filed a Motion to Dismiss pursuant to Civ.R. 12(B)(6), arguing that the text of Exhibit A was invalid under both federal and Ohio law. Appellee filed a memorandum in opposition to the Motion to Dismiss on August 24, 2020 and appellant filed a response on September 1, 2020. The trial court, pursuant to a Judgment Entry filed on October 12, 2020, denied the motion. Appellant then filed an answer on October 27, 2020.

{¶13}  Appellee, on November 30, 2020, filed a Motion for Default Judgment against Lois Glasmeier only. The trial court, as memorialized in a Judgment Entry filed on December 14, 2020, granted the motion and scheduled a hearing on damages for January 14, 2021. On January 11, 2021, appellee filed an affidavit to support an award of damages against Lois Glasmeier.

{¶14} On January 12, 2021, appellant filed a Motion for Summary Judgment, arguing again that under federal statutes and regulations as well as state regulations, the agreement requiring appellant to be personally liable for the payments of the resident.

Lois Glasmeier, was void. Appellee filed a Motion for Summary Judgment on January 19, 2021.

**{¶15}** Via a Judgment Entry filed on January 20, 2021, the trial court granted a default judgment in favor of appellee and against Lois Glasmeier only in the amount of $13,5437.00 plus interest. On January 25, 2021, appellee filed a memorandum in opposition to appellant's Motion for Summary Judgment. Appellant filed a reply on February 3, 2021 and, on February 10, 2021, filed a memorandum in opposition to appellee's Motion for Summary Judgment.

**{¶16}** The trial court, as memorialized in a Final Judgment Entry filed on February 16, 2021, granted appellee's Motion for Summary Judgment and granted appellee judgment against appellant and Lois Glasmeier, jointly and severally, in the amount of $13,547.00.

**{¶17}** Appellant now appeals, raising the following assignment of error on appeal:

**{¶18}** "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO CIVIL RULE 56 BY HOLDING THAT APPELLEE IS ENTITLED TO HOLD APPELLANT MARK GLASMEIER JOINT (SIC) AND SEVERALLY LIABLE FOR THE COSTS OF LOIS GLASMEIER'S NURSING CARE INCLUDING INTERST (SIC) THEREON, AND COSTS OF THIS ACTION."

I

**{¶19}** Appellant, in his sole assignment of error, argues that the trial court erred in granting appellee's Motion for Summary Judgment by holding that appellee is entitled to

hold him jointly and severally liable for the costs of Lois Glasmeier's nursing care including interest thereon and the costs of this action. We disagree.

**{¶20}** Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 1996-Ohio-211, 448, 663 N.E.2d 639:

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4O.O3d 466, 472, 364 N.E.2d 267, 274.

**{¶21}** As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

**{¶22}** As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

> It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex*

*Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶23} Appellant, in his sole assignment of error, specifically contends that, under both federal and state law, he, as a third-party, cannot be held liable for the debts of his mother Lois Glasmeier, a patient at appellee Altercare's nursing facility.

{¶24} There is no dispute that appellee is a skilled nursing facility.

{¶25} One component of the federal-statutory scheme, provides that "[w]ith respect to admissions practices a nursing facility must * * * not require a third-party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in the facility." 42 U.S.C. 1396r(c)(5)(A)(ii), skilled nursing facilities and nursing facilities cannot "require a third party guarantee of payment to [its] facility as a condition of admission (or expedited admission) to, or continued stay in, [its] facility."   42 U.S.C. Section 1396r(c)(5)(A)(ii).   "Similar language appears in [42 U.S.C. 1395i-3(c)(5)(A)(ii) and (B)(ii)], which govern skilled nursing facilities that accept Medicare." *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 116, 85 A.3d 947 (2014).

{¶26} Somewhat more restrictively, the Code of Federal Regulations provides, in its relevant part, as follows:

(3) The facility must not request or require a third-party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility may request and require a resident representative who has legal access to a resident's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the resident's income or resources.

(Emphasis added.) 42 C.F.R. 483.15(a)(3).

**{¶27}** Finally, Ohio's regulation provides, in its relevant part, as follows:

**{¶28}** (C) A provider of a [nursing facility] shall not: * *

(4) Require a third party to accept personal responsibility for paying the facility charges out of his or her own funds. However, the facility may require a representative who has legal access to an individual's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the individual's income or resources if the individual's medicaid application is denied and if the individual's cost of care is not being paid by medicare or another third-party payor. A third-party guarantee is not the same as a third-party payor (i.e., an insurance company), and this provision does not preclude the facility from obtaining information about medicare and medicaid eligibility or the availability of private insurance. The prohibition against third-party guarantees applies to all individuals and prospective individuals in all certified [nursing facilities] regardless of payment source. *This provision does not prohibit a third party from voluntarily making payment on behalf of an individual.*

**{¶29}** This provision permits a nursing home to sue for payment of fees assumed voluntarily by a guarantor.

**{¶30}** The federal and state regulations governing these types of agreements generally, allow nursing homes to enter into *voluntary* third-party guarantees. However, the regulations provide that a nursing home cannot make a third-party guarantee a requirement for admission or for a continued stay in the facility. As noted by the court *in*

*Village at the Greene v. Smith*, 2nd Dist. Montgomery No. 28762, 2020-Ohio-4088, ¶ 24 both federal and Ohio law strictly forbid imposing personal liability on a resident's representative who does not voluntarily agree to assume that responsibility. In *SWA, Inc. v. Straka*, 2003-Ohio-3259, the court cited to 42 U.S.C.A. Section 1395i-3(c)(5)(A); OAC 5101:3-3-02(E)[1] in holding that federal statute and state regulation preventing a nursing home from requiring a guarantor to sign the nursing home admission agreement as a condition of admission did not preclude nursing home from bringing an action to force a guarantor to pay nursing home fees.

**{¶31}** In the case sub judice, there is no evidence in the record that appellee Altercare made any representations that a guarantor was necessary to admit Lois Glasmeier. The guaranty, which was in bold and all caps, clearly and conspicuously provides as follows:

**{¶32}** BY SIGNING BELOW, THE PERSONAL GUARANTOR IS AGREEING TO VOLUNTARILY PERSONALLY GUARANTEE PAYMENT TO FACILITY, BE JOINTLY AND SEVERALLY LIABLE FOR ALL SERVICES AND SUPPLIES RECEIVED BY THE PATIENT, AND TO MAKE ALL PAYMENTS WHEN THEY COME DUE. THE PERSONAL GUARANTOR UNDERSTANDS THAT HE OR SHE IS NOT REQUIRED BY LAW OR FACILITY TO PERSONALLY GUARANTEE PAYMENT. THE PERSONAL GUARANTOR AGREES THAT THIS GUARANTEE WILL CONTINUE UNTIL ALL FINANCIAL OBLIGATIONS TO FACILITY HAVE BEEN PAID IN FULL.

**{¶33}** "A guaranty is a promise by one person to pay the debts of another." *Valspar Corp. v. Nguyen*, 5th Dist. Delaware No. 11 CAE 12 0116, 2012-

---

[1] Now OAC 5160-3-02(C)(4).

Ohio-2710, 2012 WL 2261010, ¶ 15, citing 52 Ohio Jurisprudence 3d, Guaranty and Suretyship, Section [2]. A personal guaranty agreement is reviewed under the law of contracts and a reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. *Id.*, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). Ohio law recognizes guaranty contracts as valid. *Birdsall v. Heacock*, 32 Ohio St. 177 (1877).

> A contract of guaranty is "[a] collateral engagement for the performance of the undertaking of another, and it imports the existence of two different and distinct obligations—one being that of the principal debtor and the other that of the guarantor. The obligation of a guarantor is collateral and secondary to the obligation of the principal debtor. * * * The principal debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral." 52 Ohio Jurisprudence 3d, Guaranty and Suretyship, Section 3, 239–240.

*Valspar* at ¶ 21.

**{¶34}** Parties to a guaranty are presumed to have read and understood the terms of the guaranty he or she signed. *Ranieri* at ¶ 28, quoting *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, ¶ 10.

**{¶35}** By signing the Admission Agreement and Exhibit A, which clearly and unambiguously provided that appellant was not required by law or the facility to personally guaranty payment, appellant voluntarily agreed to voluntarily make payments on his mother's behalf. The guarantee expressly states in bold and all caps above the signature line that it was voluntary. There is no evidence that the guarantee was requested or required. Appellee Altercare provided services in the amount of $13,547.00 to appellant's mother in accordance with the terms of the parties' agreement and relying upon the guarantee. Appellant does not dispute that he and his mother have not paid for the services. We find, therefore, that the trial court did not err in granting summary judgment in favor of appellee Altercare.

**{¶36}** Based on the foregoing, appellant's sole assignment of error is, therefore, overruled.

**{¶37}** The judgment of the Licking County Municipal Court is, therefore, affirmed.

By: Baldwin, P.J.

Hoffman, J. and

Delaney, J. concur.