[Cite as *Laurels of Huber Hts. v. Taylor*, 2022-Ohio-1425.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| THE LAURELS OF HUBER HEIGHTS | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29223 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-3935 |
| | : | |
| JOHNNY TAYLOR | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 29th day of April, 2022.

. . . . . . . . . . .

TITUS G. DONNELL, Atty. Reg. No. 0085266 & RYAN L. THOMAS, Atty. Reg. No. 0084828, 503 South Front Street, Suite 250, Columbus, Ohio 43215
　　　Attorneys for Plaintiff-Appellant

MARK A. FISHER, Atty. Reg. No. 0066939, 5613 Brandt Pike, Huber Heights, Ohio 45424
　　　Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} The Laurels of Huber Heights ("Laurels") appeals from a judgment of the Montgomery County Court of Common Pleas, which sustained Johnny Taylor's motion for summary judgment on Laurels' complaint for breach of contract and promissory estoppel. We reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

{¶ 2} Laurels operates a skilled nursing and rehabilitation facility, and Taylor's wife, Helena Taylor ("Helena"), became a resident of the facility on February 27, 2018. According to Laurels' complaint, Helena owed a balance of $43,296.35 to the facility, and on December 10, 2018, Taylor executed a promissory note, promising to pay Laurels the total amount due in monthly installments of no less than $1,500 per month. The promissory note was attached to the complaint as Exhibit A. According to Laurels, Taylor failed to make any payments and owed the full balance due. Laurels asserted that it reasonably relied upon Taylor's promise to pay.

{¶ 3} The document labeled Exhibit A had been executed on December 10, 2018. It stated that the amount due was $43,296.35 "until November 31st 2018, plus additional $255.00 per day for [every day] until discharge," and it designated "Helena Taylor/Johnnie [sic] Taylor" as the "Resident/Responsible Party." It stated that the resident/responsible party agreed to pay the owed amount as follows: first payment of $2,500 on December 19, 2018, and $1,500 per month by the third Wednesday of the month every month thereafter. It further stated:

The facility accepts the above arrangements and will not pursue further collections activity on this account unless the above agreement is breached by the resident/responsible party agreeing to pay the balance due.
If the monthly payments are not received as agreed upon this agreement becomes void and balance in full will be due immediately.

The agreement was signed on December 11, 2018, by Taylor as "Resident/Responsible [sic]" and by a representative of Laurels.

{¶ 4} Helena died on January 13, 2019.

{¶ 5} Laurels filed its complaint against Taylor to collect on Helena's account on October 14, 2020, and Taylor filed his answer on November 18, 2020.

{¶ 6} Laurels filed a motion for summary judgment on January 18, 2021. Laurels asserted that Taylor had agreed to pay Helena's balance due in monthly installments, and in exchange it had agreed to take no further action to recover on the debt. Laurels asserted that Taylor had "failed to perform" under the agreement with "no cognizable legal excuse." Laurels asserted damages for breach of contract in the amount of $49,490.87 and asserted that it continued to be damaged by Taylor's failure to pay.

{¶ 7} An affidavit of Jessica Collins, the Business Office Manager for Laurels, was attached to the motion for summary judgment. The affidavit stated that Laurels had fully executed "the terms of [Helena's] stay," which were to provide Helena "with room and board, as well as goods and services in exchange for monthly payment and other fees, expenses, and costs." When the Taylors failed to make payments pursuant to their agreement with Laurels and a balance became due and owing, Johnny had executed the promissory note in question (as described above). According to Collins, Laurels "fully executed its obligations arising under the Promissory Note," but Taylor failed to perform

his contractual obligations, did not make a single payment, and owed $49,490.87 pursuant to an account statement attached to the affidavit, which was dated November 30, 2020.

{¶ 8} In response to Laurel's motion for summary judgment, Taylor asserted that the case should proceed beyond summary judgment because there were genuine issues of material fact as to the amount owed and whether Taylor had contracted with Laurels "to be the responsible party for the payment." Taylor attached his own affidavit, which stated in its entirety that "the facts in the memorandum are true."

{¶ 9} On March 29, 2021, the trial court overruled Laurels' motion for summary judgment, finding that there were issues of material fact that made summary judgment inappropriate. The court set the matter for a telephone status conference on April 23, 2021, and subsequently scheduled a pre-trial scheduling conference.

{¶ 10} On June 2, 2021, Taylor filed a motion for leave of court to file a motion for summary judgment, to which his motion for summary judgment was attached. On June 4, 2021, the trial court granted the motion for leave, and Taylor's motion for summary judgment was filed. Taylor's motion asserted that the "one page document signed by [him] does not state that it is a promise to pay or obligate [him] to pay for services provided to his wife," that the document was executed after the services were provided to his wife, and that all of the services were provided only to his wife. Taylor also asserted that "the document he signed was explained to him as a payment arrangement on behalf of his wife, in lieu of her social security income being taken, for her care provided by [Laurels]."

{¶ 11} Taylor asserted that Laurels could not "employ a breach of contract

argument to impose personal liability" upon him. He cited *Village at the Greene v. Smith*, 2d Dist. Montgomery No. 28762, 2020-Ohio-4088, in support of his argument. Taylor also attached another affidavit, in which he stated: "On December 10, 2018, I did sign a payment agreement on behalf of my wife for $1,500.00 a month which I was told was for her social security income that she was receiving at the time." Taylor's affidavit was not notarized.

{¶ 12} Laurels responded to Taylor's motion for summary judgment on July 2, 2021. According to Laurels, Taylor's "assumption" of Helena's debt "was in no way predicated on, or associated with, [Helena's] admission or continued care at [Laurels]." Rather, it was "based upon separate and distinct consideration," i.e., Laurels' foregoing collection on Helena's account. Laurels also argued that *Smith*, the case cited by Taylor, was distinguishable, because the agreements signed by the patient's representative in that case clearly violated of both 42 U.S.C. 1396r(c)(5)(A)(ii) and Ohio Adm.Code 5160-3-02(C)(4) by conditioning the patient's admission or continued care on the representative's assumption of the patient's debt, which was not the case here. Laurels argued that, by the promissory note's very terms, it was executed to prevent Laurels from taking legal action to collect upon Helena's outstanding balance, which "constitute[d] separate and distinct consideration." Helena's continued care was not conditioned on the execution of the note, and Taylor provided no evidence to the contrary.

{¶ 13} In granting Taylor's motion for summary judgment, the trial court stated:

> * * * [Laurels] appears to be arguing that Johnnie Taylor was not
> prohibited from voluntarily making payments and its "installment plan" was

merely memorializing that decision. However, [Laurels] asserts that the document is a promissory note, Affidavit, Jessica Collins, Business Manager. It has filed this action against Johnnie Taylor seeking a court judgment that he is obligated to pay the bills for his wife's stay. [Laurels'] action can only be construed as an attempt to impose personal liability on defendant, Johnnie Taylor, husband of its resident.

[Laurels] admits that [Taylor's] wife was under its care when it had [Taylor] sign the subject document that it alleges is a promissory note. It admits that imposing personal liability on [Taylor] for the continued care of his wife would be unlawful. * * * It argues that the document upon which this action is based was simply having [Taylor] agree to an installment plan in exchange for forbearance from filing a civil action against him. * * *

The Court finds [Laurels'] argument unpersuasive. [Laurels'] agreement was to forbear from bringing an action against [Taylor], to render him personally responsible, and obligated to pay, for services that it could not legally impose upon him under both Ohio and federal law governing nursing homes. As stated by the Second District Court of Appeals in *Village at the Greene* [*v. Smith,* 2d Dist. Montgomery No. 28762, 2020-Ohio-4088,] [Laurels] "may not employ this 'breach of contract' rationale to impose personal liability on [Johnnie Taylor] where the involuntary imposition of such responsibility is prohibited by both state and federal law." [Laurels'] arguments conflict with the ruling "that a nursing facility may not

accomplish through these types of contractual provisions . . . what federal and Ohio law strictly forbid, imposing personal liability" on the resident's representative or family member. [*Id.* at] ¶ 24-26. The Court finds that [Laurels'] action is based on an installment payment plan designed to impose personal liability on Johnnie Taylor that it could not legally impose.

On this basis, the trial court granted summary judgment in favor of Taylor and dismissed the action.

{¶ 14} Laurels appeals, asserting the following assignment of error:

THE TRIAL COURT ERRED IN ITS DECISION AND ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT BY HOLDING THAT VILLAGE AT THE GREENE v. SMITH, 2020-OHIO-4088; 42 U.S.C. 1396r(c)(5)(A)(ii) AND OHIO ADM. CODE 5160-3-02(C)(4) PROVIDE AN ALL ENCOMPASSING PROHIBITION AGAINST A SKILLED NURSING FACILITY CONTRACTING WITH A THIRD PARTY TO ACCEPT LIABILITY ON A PATIENT'S BILL.

{¶ 15} Laurels asserts that *Smith*, 42 U.S.C. 1396r(c)(5)(A)(ii), and Ohio Adm.Code 5160-3-02(C)(4) "do not speak to the specific conduct of the parties giving rise to this action" and did not preclude Taylor from executing a promissory note to pay the outstanding debts of his wife in exchange for Laurels' promise to take no action against his wife to collect on those debts. According to Laurels, its agreement to take no action on Helena's debt "constitute[d] wholly separate consideration" and was not of a like-kind to that prohibited in the referenced authorities; Helena's continued care was no part of

the consideration, and therefore the agreement did not run afoul of 42 U.S.C. 1396r(c)(5)(A)(ii), Ohio Adm.Code 5160-3-02)(C)(4), or *Smith.*

**{¶ 16}** Taylor asserts that the trial court correctly determined that Laurels' installment payment plan was impermissibly designed to impose personal liability on him and was contrary to law.

**{¶ 17}** In *Smith,* we set forth the standard for review of a summary judgment:

We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). Once the moving party satisfies

its burden, the burden shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); Civ.R. 56(E). Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

*Smith,* 2d Dist. Montgomery No. 28762, 2020-Ohio-4088, at ¶ 11-12.

{¶ 18} We will now set forth the provisions of state and federal law relied upon by the trial court. 42 U.S.C. 1396r governs requirements for nursing facilities, and 42 U.S.C. 1396r(c)(5)(A)(ii) provides:

**(c) Requirements relating to residents' rights**

* * *

(5) Admissions policy

(A) Admissions

With respect to admissions practices, a nursing facility must—

* * *

(ii) not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility; * * *

{¶ 19} 42 C.F.R. 483.15 governs admission, transfer and discharge rights of residents, and 42 C.F.R. 483.15(a)(3) provides:

(a) Admissions policy.

* * *

(3) The facility must not request or require a third party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility may request and require a resident representative who has legal access to a resident's income or resources available to pay for facility care to sign a contract, without incurring personal financial liability, to provide facility payment from the resident's income or resources.* * *

{¶ 20} Finally, Ohio Adm.Code 5160-3-02 provides that the execution and maintenance of a provider agreement between the Ohio Department of Medicaid and the operator of a nursing facility are contingent upon compliance with the requirements set forth therein. Ohio Adm.Code 5160-3-02 (C)(4) provides:

(C) A provider of a [Nursing Facility] shall not:

* * *

(4) Require a third party to accept personal responsibility for paying the facility charges out of his or her own funds. However, the facility may require a representative who has legal access to an individual's income or resources available to pay for facility care to sign a contract, without incurring personal financial liability, to provide facility payment from the individual's income or resources if the individual's medicaid application is denied and if the individual's cost of care is not being paid by medicare or another third-party payor. A third-party guarantee is not the same as a

third-party payor (i.e., an insurance company), and this provision does not preclude the facility from obtaining information about medicare and medicaid eligibility or the availability of private insurance. The prohibition against third-party guarantees applies to all individuals and prospective individuals in all certified [nursing facilities] regardless of payment source. This provision does not prohibit a third party from voluntarily making payment on behalf of an individual.

{¶ 21} In *Smith,* 2d Dist. Montgomery No. 28762, 2020-Ohio-4088, the trial court granted summary judgment in favor of Smith, the adult son of "Father," a resident at Village at the Greene ("Village"), as to Father's unpaid account. Smith had been granted Father's power of attorney ("POA"), and he had "executed a 'Consent to Treat & Admission Agreement' in order for Father to become a resident at Village." *Id.* at ¶ 1-3. The agreement provided in part: "YOU DO FOR YOURSELF AND YOUR HEIRS ADMINISTRATORS AND EXECUTORS, AGREE TO THE TERMS OF THIS AGREEMENT IN CONSIDERATION OF THE FACILITY'S ACCEPTANCE OF AND RENDERING SERVICES TO THE RESIDENT."

{¶ 22} Exhibit A to the agreement provided in part as follows:

Potential for Discharge & Personal Guarantee of Payment

* * *

Many people wish to make sure that care and services to their loved ones are not terminated when the resident does not have the resources to pay for care. * * * Thus, we provide the opportunity for Representatives to make

payments on the Resident's behalf.

If the Representative would like to protect the Resident from being discharged for non-payment by agreeing to pay on their behalf if it becomes necessary, then he/she should initial "yes" below.

If the Representative does not wish to protect the Resident from being discharged for non-payment by agreeing to pay on their behalf if it becomes necessary, then he/she should initial "no" below.

BY INITIALING "YES", THE REPRESENTATIVE IS AGREEING TO VOLUNTARILY PERSONALLY GUARANTEE PAYMENT TO THE FACILITY, BE JOINTLY AND SEVERALLY LIABLE FOR ALL SERVICES AND SUPPLIES RECEIVED BY THE RESIDENT, AND TO MAKE ALL PAYMENTS WHEN THEY COME DUE. THE REPRESENTATIVE UNDERSTANDS THAT HE OR SHE IS NOT REQUIRED BY LAW OR THE FACILITY TO PERSONALLY GUARANTEE PAYMENT. THE REPRESENTATIVE AGREES THAT THIS GUARANTEE WILL CONTINUE UNTIL ALL FINANCIAL OBLIGATIONS TO THE FACILITY HAVE BEEN PAID IN FULL.

*Id.* at ¶ 3.   Smith placed his initials on the "no" line on the agreement.   *Id.*

{¶ 23} As this Court noted:

An additional exhibit to the contract, entitled "Representative Authority & Duties," provided that, as Father's representative, Smith "ha[d] legal access to and control over" Father's assets and resources (Complaint,

Exh. A, attached Exh. C, ¶ C3), and "shall act in a fiduciary capacity on [Father's] behalf to satisfy [Father's] financial obligations" under the contract with Village. (*Id.* at ¶ C2.) The contract provided that Smith, as Father's representative, could be personally liable for failing to pay Father's debt to Village from Father's resources under two circumstances:

* * * if any of [Father's] Resources transfer by operation of law while [Father] still has outstanding debts to [Village] and such transfer causes [Father's] remaining resources to be insufficient to pay the debt in full, then the Representative [Smith] agrees to be personally responsible for the remaining debt to [Village]. You agree that if You [sic] have misrepresented the Representative's legal authority to control [Father's] Resources or to enter into this Agreement on behalf of [Father], or if the Representative has misrepresented any information to [Village] as part of the admission process, then the Representative agrees to be personally liable for all of [Father's] responsibilities in this Agreement.

*Id.* at ¶ 4.

**{¶ 24}** Finally, "Exhibit C to the contract also obligated Smith, as Father's representative, to 'cooperate fully in any application, redetermination or appeals process related to Medicaid eligibility.' " *Id.* at ¶ 5. It further provided:

The Representative agrees to pay from his/her own resources any unpaid charges due to the Facility as a result of the Representative's failure to cooperate in the Medicaid eligibility or redetermination process, or appeals

thereto. "Failure to cooperate" shall include, but is not limited to, failing to provide documentation to the Medicaid agency in the time frames defined by law or as indicated by the relevant representative of the Medicaid agency.

*Id.*

{¶ 25} On May 16, 2019, the Village sued Father and Smith (as POA) for breach of contract and unjust enrichment. *Id.* at ¶ 6. In his motion for summary judgment, Smith asserted that he had resigned as Father's POA on August 9, 2019, that he remained in the action only in his individual capacity, and that he was not personally responsible for Father's alleged indebtedness to the Village. *Id.* at ¶ 7. The trial court entered summary judgment in favor of Smith, and this Court affirmed the judgment of the trial court on appeal.

{¶ 26} On appeal, the Village argued that the trial court had erred in denying it the right to the enforce the admission agreement, the terms "of which are expressly included to overcome the limitations existing in the inability of * * * Village at the Greene to enforce the fiduciary powers in the Resident's Power of Attorney granted to the Agent, who is also the Representative." *Id.* at ¶ 10.

{¶ 27} We held:

* * * Smith, in executing the contract with Village as Father's representative (whether through his power of attorney or otherwise), did not become subject to individual liability for the expenses incurred for Father's care. Smith specifically disclaimed in writing any intent or willingness to

assume personal responsibility for Father's charges. (Complaint, Exh. A, attached Exh. A.) Village attempted to override that declaration by arguing that Smith is personally liable for the breach of contract terms that required him to pay Father's expenses from Father's assets and for his alleged "failure to cooperate" in attempting to secure Medicaid benefits for Father's expenses. Reviewing the matter de novo, we agree with the trial court's conclusion that Village may not employ this "breach of contract" rationale to impose personal liability on Smith where the involuntary imposition of such responsibility is prohibited by both state and federal law.

Id. at ¶ 19.

{¶ 28} Citing 42 U.S.C. 1396r(c)(5)(A)(ii), 42 C.F.R. 483.15(a)(3), and Ohio Adm.Code 5160-3-02(C)(4), we determined as follows:

Although other Ohio appellate courts have alluded to the implications of 42 U.S.C. 1396r(c)(5)(B)(ii) and Ohio Adm.Code 5160-3-02(C)(4) in this context, those decisions ultimately did not determine whether such provisions prohibit the imposition of personal liability on a third-party alleged to have breached an agreement to pay a nursing facility from the nursing facility resident's assets under the third-party's control. * * *

With that issue now squarely before us as a component of Smith's defense, we determine that a nursing facility may not accomplish through these types of contractual provisions (i.e., requiring a third-party representative to pay the nursing facility from the resident's assets and/or

to assist in obtaining government or insurance benefits to pay such charges) what federal and Ohio law strictly forbid: imposing personal liability on a resident's representative who does not voluntarily agree to assume that responsibility.   While 42 U.S.C. 1396r(c)(5)(A)(ii) explicitly authorizes a nursing facility to require a third-party with "legal access to a resident's income or resources * * * to sign a contract * * * to provide payment" to the nursing facility from the resident's income or resources, that authorization comes with the express proviso that the third-party signs any such contract "without incurring personal financial liability."   42 C.F.R. 483.15(a)(3), too, provides that a third-party may be required to sign such a contract "without incurring personal financial liability," and Ohio Adm.Code 5160-3-02(C)(4) echoes the same "without incurring personal financial liability" language.

In direct contravention of the provisions of 42 U.S.C. 1396r(c)(5)(A)(ii), 42 C.F.R. 483.15(a)(3), and Ohio Adm.Code 5160-3-02(C)(4), the form contract that Village required Smith to sign in order to admit Father to Village's care provided that Smith "agree[d] to pay from his/her own resources any unpaid charges due to [Village] as a result of the Representative's [Smith's] failure to cooperate in the Medicaid eligibility process." * * * Village is not entitled to enforce that provision.

Furthermore, as to the contract terms that purported to subject Smith to personal liability for failing to assure that Father's charges were paid from Father's resources under Smith's control (*id.* at ¶ C3), Village did not

produce evidence in opposition to Smith's summary judgment motion that demonstrated Father's resources had "transfer[red] by operation of law while [Father] * * * ha[d] outstanding debts to [Village]," or that Smith "misrepresented" to Village any information pertinent to Father's resources or admission. (*See id.*) Absent such evidence, Village failed to sustain its burden to show that a genuine issue of material fact remained regarding Smith's personal liability, even if such personal liability could be imposed in circumstances this record does not even suggest (e.g. self-serving malfeasance by the representative).

Given that Smith had resigned as Father's attorney-in-fact and Village demonstrated no valid factual or legal basis on which to hold Smith personally liable for Father's indebtedness to Village, the trial court did not err by entering summary judgment in Smith's favor as to Village's complaint in its entirety.

*Id.* at ¶ 23-27.

{¶ 29} We conclude that the matter herein is distinct from *Smith*. First, our decision in *Smith* makes clear that Smith executed the "Consent to Treat & Admission Agreement" "*in order for Father to become a resident at Village*," and that Village sought to enforce the *admission* agreement. As we noted, Smith "specifically disclaimed in writing any intent or willingness to assume personal responsibility for Father's care," and this Court determined that the facility could not impose personal liability on a representative who did not voluntarily agree to that responsibility. While the facility

asserted that contract law applied to the enforcement of the provision in the admission agreement that required Smith "to pay from his/her own resources any unpaid charges due to due to [Village] as a result of [Smith's] failure to cooperate in the Medicaid eligibility process," we determined that, pursuant to 42 U.S.C. 1396r(c)(5)(A)(ii), 42 C.F.R. 483.15(a)(3), and Ohio Adm.Code 5160-3-02(C)(4), the facility was not entitled to enforce that provision of the Admission Agreement.

**{¶ 30}** In contrast, the December 10, 2018 "payment agreement" that Taylor executed was addressed to a past due balance accrued by Helena over the nine months since her admission. We note that any admission agreement Helena may have executed is not part of our record.

**{¶ 31}** As we noted in *Smith*:

"To prove a breach of contract claim, a plaintiff must show 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.' " *Nilavar v. Osborn*, 137 Ohio App.3d 469,483-484, 738 N.E.2d 1271 (2d Dist.2000), quoting *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994). However, " '[a] contract is binding only upon parties to a contract and those in privity with them.' " *Vancrest Mgt. Corp. v. Mullenhour*, 2019-Ohio-2958, 140 N.E.3d 1051, ¶ 13 (3d Dist.), quoting *Gilchrist v. Saxon Mtge. Servs.*, 10th Dist. Franklin No. 12AP-556, 2013-Ohio-949, ¶ 23.

*Smith* at ¶ 14.

**{¶ 32}** Since the federal and state authorities relied upon in *Smith* are applicable

to admission and provider agreements, we conclude that they do not apply to the "payment agreement" executed by Taylor. As noted above, pursuant to the terms of the payment agreement, Taylor agreed to pay a monthly amount in exchange for Laurels' forbearance in "pursuing * * * collections activity." Taylor acknowledged that he signed the payment agreement and that it was executed after Laurels provided services to Helena. While he disputed the amount due, he provided no evidence to establish a genuine issue of material fact regarding the balance owed. He further provided no evidence that the monthly payment he agreed to pay "was for [Helena's] social security income that she was receiving at the time," as he averred in the affidavit attached to his motion, which was not notarized. Based upon the foregoing, and in the absence of a genuine issue of material fact, we conclude that Laurels had a valid legal basis to hold Taylor personally liable for Helena's past-due balance. In other words, we agree with Laurels that the authorities relied upon by Taylor did not provide an all-encompassing prohibition against a skilled nursing facility's contracting with a third party to accept liability on a patient's bill.

{¶ 33} Laurels' assignment of error is sustained.

{¶ 34} The judgment of the trial court is reversed, and the matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . . . . .


WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Titus G. Donnell
Ryan L. Thomas
Mark A. Fisher
Hon. Richard S. Skelton